# 22-2760

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

**Yout LLC**

*Plaintiff-Appellant,*

*vs.*

**Recording Industry of America, Inc.,
Doe Record Companies, 1-10**

*Defendant-Appellee.*

---

Appeal from United States District Court
District of Connecticut (New Haven)
Hon. Stefan R. Underhill
U.S. District Court Case No. 20cv1602

---

## APPELLEE'S ANSWERING BRIEF

---

Glenn D. Pomerantz
* Rose Leda Ehler
Shannon Aminirad
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100
Rose.Ehler@mto.com

Attorneys for Recording Industry of America, Inc.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Recording Industry

Association of America, Inc. states that it is a nonprofit corporation that does not

have a parent corporation, is not owned in any part by a publicly held corporation,

and is not a government entity.

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ........................................................................................1

STATEMENT OF JURISDICTION.............................................................5

ISSUES PRESENTED.................................................................................5

STATEMENT OF CASE .............................................................................6

I. THE DIGITAL MILLENNIUM COPYRIGHT ACT ....................................6

    A. Congress's Purposes In Enacting The DMCA.............................6

    B. The DMCA's Anti-Circumvention Provisions ...........................7

    C. The Streaming Market For Copyrighted Works Depends On Robust Enforcement Of The DMCA ...........................................9

II. YOUT'S FACTUAL ALLEGATIONS ......................................................11

    A. Yout Acknowledges That The YouTube Video Player Is Limited To Only Streaming .....................................................11

    B. Yout's Complaint Details A Complicated Set Of Steps To Download Video And Music Files From YouTube......................14

    C. Yout's Allegations Make Clear YouTube Employs A Signature Mechanism And Yout Bypasses It ......................................16

III. EFFORTS TO COUNTER TODAY'S MUSIC PIRACY............................17

    A. Stream-Ripping Services Short-Circuit The Ad-Supported Streaming Market..............................................................17

    B. RIAA Combats Piracy By Sending Anti-Circumvention Notices To Google.....................................................................18

    C. Courts Recognize That Stream-Rippers Violate Anti-Piracy Laws ..........................................................................19

IV. PROCEDURAL HISTORY ......................................................................20

    A. Yout's Lawsuit Against The RIAA.............................................20

    B. The District Court's Opinion Dismissing Yout's Second Amended Complaint.............................................................21

        1. The District Court Found That Yout's Own Pleading Established A "Technological Measure" That Is "Effective" ..........................................................21

2. The District Court Found That Yout's Own Pleading Established Circumvention .......................................................23

3. The District Court Found That Yout Failed To Plausibly Plead That It Does Not Violate The Anti-Trafficking Provisions..............................................................................23

SUMMARY OF ARGUMENT ..............................................................25

STANDARD OF REVIEW ....................................................................27

ARGUMENT ..........................................................................................28

I. YOUT'S SECTION 1201 CLAIM FAILS BECAUSE ITS OWN ALLEGATIONS ESTABLISH THAT YOUT TRAFFICS IN CIRCUMVENTION TECHNOLOGY .....................................................28

A. The Allegations Establish YouTube Employs A "Technological Measure" That "Effectively Controls Access" To Copyrighted Works ..............................................................................................29

1. Section 1201 "Access-Control" Provisions Apply To Technology That Restrains A User's Ability To Access The Copyrighted Work ...................................................29

2. The Only Plausible Reading Of Yout's Allegations Is That YouTube's Rolling Cipher Is A Technological Measure That Effectively Controls Access To Copyrighted Works......................................................32

3. Yout's Arguments On Appeal Are At Odds With The Plain Text Of Section 1201 And On-Point Authority ..............34

(a) Yout's authorization to access argument is wrong.........34

(b) Section 1201(b) does not undermine the district court's analysis ...............................................37

(c) Yout relies on inapposite case law .................................39

(d) Interpreting "technological measure" as a control on access does not amount to a control on how a person experiences or uses content................................40

B. The Allegations Establish That Yout's Service Circumvents YouTube's Effective Technological Measure ....................................42

C. The Allegations Establish That Yout Traffics In Circumvention Technology..........................................................................................44

iii

1. Yout Failed to Plead A Section 1201(b) Claim, And The Claim Would Fail Even If Yout Had Properly Raised It..........45

2. Yout Failed To Plausibly Plead That Its Service Does Not Violate *At Least One Of* Section 1201's Anti-Trafficking Provisions .............................................................48

II. YOUT'S SECTION 512(F) CLAIM FAILS BECAUSE THAT SECTION DOES NOT APPLY TO CLAIMS OF CIRCUMVENTION....................................................................51

III. YOUT'S BUSINESS DISPARAGEMENT AND DEFAMATION PER SE CLAIMS FAIL FOR REASONS INDEPENDENT OF ITS SECTION 1201 CLAIM .................................................55

CONCLUSION ........................................................................56

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**FEDERAL CASES**

*321 Studios v. Metro Goldwyn Mayer Studios, Inc.*,
   307 F. Supp. 2d 1085 (N.D. Cal. 2004)................................................24, 36, 43

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ...........................................................................48

*In re Ames Dep't Stores, Inc.*,
   582 F.3d 422 (2d Cir. 2009) .............................................................................30

*Arista Records, Inc. v. Mp3Board, Inc.*,
   No. 00 CIV. 4660 (SHS), 2002 WL 1997918 (S.D.N.Y. Aug. 26,
   2002) ...................................................................................................................52

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................27

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................27

*BMG Music v. Gonzalez*,
   430 F.3d 888 (7th Cir. 2005) ............................................................................48

*Cabell v. Zimmerman*,
   No. 09 Civ. 10134 (CM), 2010 WL 996007 (S.D.N.Y. Mar. 12,
   2010) .............................................................................................................53, 54

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) .............................................................................13

*Chevrestt v. Am. Media, Inc.*,
   204 F. Supp. 3d 629 (S.D.N.Y. 2016) ..............................................................54

*CrossFit, Inc. v. Alvies*,
   No. 13-3771 SC, 2014 WL 251760 (N.D. Cal. Jan. 22, 2014) .........................52

*Digit. Drilling Data Systems, LLC v. Petrolink Servs.*,
   965 F.3d 365 (5th Cir. 2020) .................................................................39, 40, 41

v

*DISH Network L.L.C. v. World Cable Inc.*,
893 F. Supp. 2d 452 (E.D.N.Y. Sept. 28, 2012)...........................................42, 43

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ............................................................... 4, passim

*Green v. Dep't of Educ. of City of New York*,
16 F.4th 1070 (2d Cir. 2021) ...............................................................27

*Harris v. Mills*,
572 F.3d 66 (2d Cir. 2009) ...............................................................27

*Hattler v. Ashton*,
No. LA CV16-04099 JAK (KSx), 2017 WL 11634742 (C.D. Cal.
Apr. 20, 2017)...............................................................40

*Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*,
No. 16-CV-1318 (GBD)(BCM), 2017 WL 696126 (S.D.N.Y. Feb.
15, 2017) ...............................................................44

*L-7 Designs, Inc. v. Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011) ...............................................................27

*Learning Care Grp., Inc. v. Armetta*,
No. 3:13-CV-01540 (VLB), 2014 WL 12651264 (D. Conn. Sept.
30, 2014) ...............................................................56

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
387 F.3d 522 (6th Cir. 2004) ...............................................................39, 40, 41

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
676 F.3d 83 (2d Cir. 2012) ...............................................................29

*McGucken v. Newsweek LLC*,
464 F. Supp. 3d 594 (S.D.N.Y. 2020) ...............................................................13

*MDY v. Blizzard Ent., Inc.*,
629 F.3d 928 (9th Cir. 2010) ...............................................................38

*Melendez v. Sirius XM Radio, Inc.*,
50 F.4th 294 (2d Cir. 2022) ...............................................................27

vi

*Nat'l Academy of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*,
551 F. Supp. 3d 408 (S.D.N.Y. 2021) ...............................................53

*Nat'l Rifle Ass'n of Am. v. Vullo*,
49 F.4th 700 (2d Cir. 2022) ................................................54

*Ningbo Mizhihe I&E Co., Ltd. v. Does 1–200*,
No. 19 Civ. 6655 (AKH), 2020 WL 2086216 (S.D.N.Y. Apr. 30, 2020) ................................................ 53, 54

*Norton v. Sam's Club*,
145 F.3d 114 (2d Cir. 1998) ...............................................46

*Prudent Tr. Co. Ltd. v. Touray*,
No. 2:14-cv-08965-RSWL-MAN, 2014 WL 12575854 (C.D. Cal. Nov. 25, 2014) ................................................30

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
579 U.S. 115 (2016)................................................32

*R. Christopher Goodwin & Assocs. v. Search, Inc.*,
No. C.A. 19-11290, 2019 WL 5576834 (E.D. La. Oct. 29, 2019) ....................44

*R.C. Olmstead, Inc. v. CU Interface, LLC*,
657 F. Supp. 2d 878 (N.D. Ohio 2009) ...............................................44

*RealNetworks, Inc. v. DVD Copy Control Ass'n*,
641 F. Supp. 2d 913 (N.D. Cal. 2009)................................................ 31, passim

*Rossi v. Motion Picture Ass'n of Am., Inc.*,
391 F.3d 1000 (9th Cir. 2004) ................................................51, 53

*Saray Dokum Ve Madeni Aksam Sanayi Turizm A.S. v. MTS Logistics, Inc.*,
No. 17 Civ. 7495 (JPC), 2021 WL 1199470 (S.D.N.Y. Mar. 30, 2021) ................................................45

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
464 U.S. 417 (1984)................................................47

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
864 F.3d 236 (2d Cir. 2017) ...............................................55

vii

*Twelve Inches Around Corp. v. Cisco Sys., Inc.*,
    No. 08 CIV. 6896 (WHP), 2009 WL 928077 (S.D.N.Y. Mar. 12,
    2009) .......................................................................................51, 52

*UMG Recordings, Inc. v. Kurbanov*,
    963 F.3d 344 (4th Cir. 2020) ...............................................18

*UMG Recordings, Inc. v. Kurbanov*,
    No. 1:18-cv-957, ECF No. 139 (E.D. Va. Dec. 16, 2021) ................................19

*UMG Recordings, Inc. v. MP3.com, Inc.*,
    92 F. Supp. 2d 349 (S.D.N.Y. 2000) ...................................48

*United States v. Broadcast Music, Inc.*,
    275 F.3d 168 (2d Cir. 2001) ..............................................46

*Universal City Studios, Inc. v. Corley*,
    273 F.3d 429 (2d Cir. 2001) ...................................... 7, passim

*Universal City Studios, Inc. v. Reimerdes*,
    111 F. Supp. 2d 294 (S.D.N.Y. 2000) ...................................30, 33, 43

*Verragio, Ltd. v. AE Jewelers, Inc.*,
    No. 15-cv-6500, 2017 WL 4125368 (S.D.N.Y. Aug. 23, 2017) .......................55

### State Cases

*QSP, Inc. v. Aetna Cas. & Sur. Co.*,
    773 A.2d 906 (Conn. 2001) ...............................................55

### Federal Statutes

17 U.S.C. § 106 ....................................................................46

17 U.S.C. § 512(f) ...................................................... 5, passim

17 U.S.C. § 1201(a) *et seq.* ......................................... 2, passim

17 U.S.C. § 1201(b) *et seq.* ......................................... 8, passim

17 U.S.C. § 1202 ....................................................................32

28 U.S.C. § 1291 ....................................................................5

28 U.S.C. § 1331 .......................................................................5

28 U.S.C. § 1367 .......................................................................5

28 U.S.C. § 2201 .......................................................................5

**FEDERAL RULES**

Fed. R. Civ. P. 10(b) .........................................................27, 45

Fed. R. Civ. P.  12(b)(6) ..........................................................56

**FEDERAL REGULATIONS**

80 Fed. Reg. 65944-01 (Oct. 28, 2015) ...................................48

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 105-551(I) (1998) ..............................................6

S. Rep. No. 105-190 (1998) ...................................6, 7, 19, 38

Chapter 12 of Title 17, Hearing before the Subcomm. on Courts, Intellectual Property and the Internet of the H. Comm. on the Judiciary, 113th Cong., 2d Sess. (Sept. 17, 2014) .............................................10

**OTHER AUTHORITIES**

Nimmer on Copyright § 12A.06 ...............................................38

U.S. Copyright Office, Section 512 of Title 17: A Report of the Register of Copyrights (May 2020), https://www.copyright.gov/policy/section512/section-512-full-report.pdf...........................................................................11

U.S. Copyright Office, Section 1201 of Title 17: A Report of the Register of Copyrights (June 2017), https://www.copyright.gov/policy/1201/section-1201-full-report.pdf..............................................................................9

## INTRODUCTION

This case involves Yout's illicit stream-ripping service. YouTube provides users with streams of music videos, not free downloads. YouTube's users can watch and listen to music videos for free on its ad-supported service, but those users do not get access to the digital files that contain the record companies' valuable copyrighted works. As its name suggests, *Yout* enables its users to gain unauthorized access to the digital music files from *YouT*ube and download copies. The purpose of Yout is to bypass YouTube's technological restrictions on accessing the digital copies of works streamed on YouTube. Yout's users have no need to purchase authorized subscriptions or to frequent ad-supported streaming services. And Yout pays nothing to the owners of the copyrighted content that is plundered.

The Recording Industry Association of America, Inc. ("RIAA") represents the record companies that own or control the copyrights in the great majority of the world's most popular sound recordings. RIAA members authorize online streaming services, such as Google's YouTube, to stream their copyrighted works. In return, Google shares revenue it earns from advertising or subscriptions with RIAA members and protects their copyrighted sound recordings from unauthorized access and copying. These business relationships are the cornerstone of the digital music economy and fuel the creation of new works. To protect its members'

rights, RIAA notified Google that Yout was providing a stream-ripping service in violation of the anti-circumvention prohibitions in the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.* ("DMCA").

Yout responded by filing this lawsuit, asserting implausible claims that its stream-ripping technology is perfectly lawful and that RIAA should pay Yout damages for notifying Google of Yout's unlawful circumvention. The district court allowed Yout to amend its complaint twice and conducted two hearings on RIAA's motion to dismiss. The district court then issued a 46-page opinion that carefully analyzed Yout's allegations, applied the statute's plain text and settled law interpreting it, and correctly concluded that Yout failed to state a claim.

The district court's opinion was correct on all counts. It is in line with multiple courts that have found similar stream-ripping technology unlawful, in some cases (outside the United States) including Yout's own service. The district court's judgment should be affirmed.

A straightforward application of the DMCA to Yout's allegations compels the conclusion that Yout cannot plausibly plead it does not violate the statute. The DMCA makes it illegal to "circumvent a technological measure that effectively controls access to a [copyrighted] work" and traffic in such circumvention technology. 17 U.S.C. §§ 1201(a)(1)(A), (a)(2). The core questions in this case are whether YouTube employs a technological measure that effectively controls

2

access to copyrighted works, and if so, whether Yout circumvents it. The answer to both questions is yes. First, Yout alleges that YouTube employs a "signature mechanism" that requires "read[ing] and interpret[ing]" JavaScript to "derive[] a signature value." JA-57 (SAC ¶ 98). That is a description of an effective technological measure. 17 U.S.C. § 1201(a)(3)(B). Second, Yout alleges that its service uses a process for avoiding or bypassing this technological measure by, among other steps, "*modif[ying]*" the range of numbers in the "signature value," and thereby gaining unauthorized access to the "download[able]" "file[s]" that comprise the music video. JA-48–49, 50–52, 57 (SAC ¶¶ 69–70, 72–74, 98) (emphasis added). Thus, to download a video on YouTube, a user must bypass the signature mechanism by changing the YouTube-assigned signature value. That is a description of circumvention. 17 U.S.C. § 1201(a)(3)(A). Yout's service is designed and marketed expressly to this end and serves no other significant purpose. JA-38, 43 (SAC ¶¶ 21, 23–24, 54); 17 U.S.C. § 1201(a)(2)(A)–(C).

Yout raises a scattershot of arguments for reversal. None of them succeeds. For example, Yout argues that discovery is necessary to determine whether YouTube "inten[ded]" the signature value mechanism to be a technological measure under the DMCA, Br. at 34; but YouTube's intent is irrelevant under the statute.

Yout also argues that YouTube "does not restrict access to the videos available on its website."  Br. at 39; *see id.* 40–44.  This is wordplay.  YouTube provides access to *streamed performances* of music videos, *i.e.*, YouTube allows a user to press "play" to *watch and listen* to a video.  But YouTube uses technology to restrict users from accessing the underlying copies of the digital files containing the audio and the video, *i.e.*, access to the copyrighted works themselves, such that users in the ordinary course cannot download copies of the music video files.  Indeed, if YouTube did not restrict access to those files, there would be no need for Yout's service.

Yout also argues that the district court erred because it did not analyze Yout's service under the proscriptions on trafficking in so-called "copy-control" measures, 17 U.S.C. § 1201(b)(1).  Br. at 45–50.  This argument fails.  Yout sought a declaration that its service does not violate *any* provision of section 1201.  When the district court found that Yout violated section 1201(a)(2)'s proscription on trafficking in technology to circumvent access-control measures, it was clear that Yout's declaratory judgment claim could not succeed.  More fundamentally, Yout's premise that a party's liability may only be assessed under one or the other of section 1201(a) or 1201(b) is wrong.  It is well-settled that a party may be liable under *both* anti-trafficking provisions.  *Disney Enters., Inc. v. VidAngel, Inc.*, 869

4

F.3d 848, 864 (9th Cir. 2017) ("a [technological measure] could 'both (1) control access and (2) protect against copyright infringement" (citation omitted)).

Yout has already filed *three* versions of its complaint. No amount of discovery or further litigation will change the result. The district court's judgment should be affirmed.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over Yout's claims for declaratory relief and for alleged violation of section 512(f) pursuant to 28 U.S.C. §§ 1331, 2201. The district court had supplemental jurisdiction over Yout's state law claims pursuant to 28 U.S.C. § 1367. The district court entered judgment on September 30, 2022, and Yout filed its notice of appeal on October 20, 2022. JA-285–86. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.      Whether Yout failed to state a plausible claim for declaratory relief that it does not violate section 1201, even though Yout traffics in stream-ripping technology designed, marketed, and used to obtain access to and copy copyrighted works.

2.      Whether, as the statutory makes clear, section 512(f) is applicable only to notices of claimed copyright infringement, and not to notices of claimed circumvention in violation of section 1201.

5

3.     Whether Yout could plead state law business disparagement and defamation per se claims when Yout is unable to show RIAA's notices were false.

## STATEMENT OF CASE

### I.     The Digital Millennium Copyright Act

### A.     Congress's Purposes In Enacting The DMCA

This appeal primarily concerns the DMCA's anti-circumvention (and anti-trafficking) provisions, 17 U.S.C. § 1201 *et. seq.*  Congress enacted the DMCA in 1998 to "create[] the legal platform for launching the global digital on-line marketplace for copyrighted works" and to "facilitate making available quickly and conveniently via the Internet the movies, music, software, and literary works that are the fruit of the American creative genius."  S. Rep. No. 105-190, at 8 (1998); *see also* H.R. Rep. No. 105-551(I), at 9 (1998) (DMCA "intended to ensure a thriving electronic marketplace for copyrighted works on the Internet"); *id.* at 10 ("When copyrighted material is adequately protected in the digital environment, a plethora of works will be distributed and performed over the Internet.").

Congress recognized that online piracy was a major threat to the use of the Internet for the broad dissemination of copyrighted works.  Congress knew that, because of "the ease with which digital works can be copied and distributed worldwide," "copyright owners [would] hesitate to make their works readily

available on the Internet" without meaningful legal protection in the digital environment. S. Rep. No. 105-190, at 8. Congress addressed this problem through a legal framework to prohibit circumvention of technological measures that safeguarded access to those works.

Congress intentionally crafted that legal framework to adapt with new technologies and means of online distribution that were, at that point in time, nascent or even unforeseen. *See, e.g.*, S. Rep. No. 105-190, at 15 (envisioning "the rapid and dynamic development of better technologies"); *id.* at 2 (describing how "[c]opyright laws have struggled through[out] the years to keep pace with emerging technology" and that "[w]ith this constant evolution in technology, the law must adapt"). Therefore, Congress did not specify the technology that must be used to qualify for section 1201 protections, instead focusing on *how* that technology functioned to control access and protect copyrighted works. 17 U.S.C. § 1201.

## B.    The DMCA's Anti-Circumvention Provisions

In *Corley*, this Court provided an overview of the DMCA's anti-circumvention provisions. *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 440–41 (2d Cir. 2001). In brief:

Subsection 1201(a)(1)(A) is the anti-circumvention provision. It prohibits the *act* of "circumvent[ing] a technological measure that effectively controls access

7

to a work protected under [Title 17, governing copyright]." *Corley*, 273 F.3d at 440; 17 U.S.C. § 1201(a)(1)(A).

Subsections 1201(a)(2) and 1201(b)(1) are the "anti-trafficking provisions," which prohibit the "manufacture, import, offer to the public, provi[sion], or otherwise traffic[king] in any technology, product, service, device, component, or part thereof, that" is (A) "primarily designed or produced for the purpose of circumventing—"; (B) "has only limited commercially significant purpose or use other than to circumvent—"; or (C) "is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing—" an effective technological measure. *Corley*, 273 F.3d at 440; 17 U.S.C. §§ 1201(a)(2)(A)–(C), (b)(1)(A)–(C).

A violation of any of these provisions requires two basic elements: (1) the existence of an effective technological measure, and (2) circumvention. The definitions are set out in the statute:

- **Effective Technological Measure:** Under section 1201(a), a technological measure "'effectively controls access to a work' if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. §1201(a)(3)(B). Under section 1201(b), a technological measure "'effectively protects [the] right of a copyright

8

owner'" where it "prevents, restricts, or otherwise limits the exercise of a right of a copyright owner under [Title 17]." *Id.* §1201(b)(2)(B). A technological measure can both control access and protect against copying. *See* Argument, Section I.A.3.b, *infra*.

- **Circumvention:** Circumvention is defined as "descrambl[ing] a scrambled work, . . . decrypt[ing] an encrypted work, *or otherwise* . . . avoid[ing], bypass[ing], . . . deactivat[ing], or impair[ing] a technological measure, without the authority of the copyright owner," 17 U.S.C. § 1201(a)(3) (emphasis added); *see also id.* § 1201(b)(2)(A) ("avoiding, bypassing, removing, deactivating, or otherwise impairing a technological measure").

Courts then look to the anti-trafficking provisions to determine whether *any* of the three disjunctive requirements is met. *Id.* §§ 1201(a)(2)(A)–(C), 1201(b)(1)(A)–(C). Nothing in the statute forecloses a device from being subject to challenge under *both* trafficking provisions.

### C. The Streaming Market For Copyrighted Works Depends On Robust Enforcement Of The DMCA

The DMCA has been credited with enabling the rise of streaming service distribution models for copyrighted content: "Many copyright owners argue that the statute has worked just as Congress intended, laying the legal foundation for the explosion in legitimate digital dissemination models over the past two decades." U.S. Copyright Office, Section 1201 of Title 17: A Report of the

Register of Copyrights, at ii (June 2017), https://www.copyright.gov/policy/1201/ section-1201-full-report.pdf (hereinafter "Section 1201 Report"); *id.* at 37 ("[L]egal protections afforded by section 1201 have played a critical role in [copyright owners'] decisions to enter emerging digital markets."); *see also* Chapter 12 of Title 17, Hearing before the Subcomm. on Courts, Intellectual Property and the Internet of the H. Comm. on the Judiciary, 113th Cong., 2d Sess., at 2 (Sept. 17, 2014) (statement of Rep. Jerrold Nadler) (similar).

The DMCA has paved the way for advertising-based streaming services to flourish. Section 1201 Report at 44–46 ("The dramatic growth of streaming services," including models like "*ad-supported services*," has helped streaming "become a preferred method of delivering copyrighted content." (emphasis added)). Consumers now have the option to stream music, movies, and other works (at no financial cost to the user) on an online advertisement-supported service, like YouTube. Protecting that market is critical. The United States Copyright Office recently explained:

> The technology that allows copyright owners to distribute content directly to consumers' living rooms via streaming services also enables new forms of piracy: streaming of unlicensed content and stream-ripping—that is, using software to make an unlicensed copy of streamed content that would otherwise be licensed . . . . Stream-ripping in particular has been a growing problem for the music industry.

U.S. Copyright Office, Section 512 of Title 17: A Report of the Register of

Copyrights, at 31 & n.143 (May 2020), https://www.copyright.gov/policy/

section512/section-512-full-report.pdf.

## II.    Yout's Factual Allegations

Yout's Second Amended Complaint (SAC) and judicially noticeable

materials provide the factual allegations that render Yout's claim implausible.

### A.    Yout Acknowledges That The YouTube Video Player Is Limited To Only Streaming

YouTube is a "video streaming website" or an "online video platform."  JA-

12 (Compl. ¶ 21); JA-42 (SAC ¶ 49).  Visitors to YouTube watch and listen to

streams of music videos in the YouTube video player.  *See* JA-44–45 (SAC ¶¶ 63–

64).  According to Yout, the typical way that users watch music videos on

YouTube is to visit the URL for a particular video and then push play on the

YouTube video player.  JA-42–43 (SAC ¶¶ 49–51, 56, 58).



JA-45 (SAC ¶ 64). This enables "view[ing]" or *streaming* of the music video. *Id.*

("If one chooses to view 'The Lakes (Original Version),' the music video can be

*viewed* at a specific url." (emphasis added)).

This description is consistent with common experience. YouTube users can

enjoy streaming a wide range of content, at no financial cost to them, typically

after watching a short advertisement, but may not download copies of that

content.[1]

_____

[1] For example, the Taylor Swift music video referenced in the SAC plays an
advertisement before the actual video. *See* JA-45 (SAC ¶ 64); Taylor Swift, *The*

YouTube's Terms of Service,[2] further confirm the normal process:

> You may *view or listen* to Content for your personal, non-commercial use.  You are *not allowed* to:
>
> 1. *access, reproduce, download* . . . any Content except: (a) as expressly authorized by the Service; or (b) *with prior written permission from YouTube and, if applicable, the respective rights holders*;
>
> 2. circumvent, . . . or otherwise interfere with any part of the Service . . . that (a) prevent[s] or restrict[s] the copying or other use of Content.

JA-127–28 (emphasis added).  Even the portions of YouTube's terms cited by

Yout, *see* Br. at 42, confirm access is authorized only *through* YouTube, not

through a third-party service:

> [users] grant other user[s] of the Service a worldwide, non-exclusive, royalty-free license to access [their] content *through the Service*, and to use that Content, including to reproduce, distribute, prepare derivative works, display, and perform it, *only as enabled by a feature of the Service* (such as video playback or embeds).  For clarity, *this license does not grant any rights or permissions for a user to make use of your Content independent of the Service*.

JA-130 (emphasis added).

---

*Lakes (Original Version) [Audio]*, YouTube, https://www.youtube.com/watch?v=y8tF0yRl8-w.

[2] The district court properly took judicial notice of YouTube's Terms of Service, cited at paragraph 100 of Yout's operative complaint.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (judicial notice of documents incorporated by reference in the complaint); *McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 600 & n.2 (S.D.N.Y. 2020) (similar for Instagram's terms of service).

### B. Yout's Complaint Details A Complicated Set Of Steps To Download Video And Music Files From YouTube

In dismissing a prior version of Yout's complaint, the district court instructed Yout to plead non-conclusory allegations regarding how the technology at issue operates. JA-117–18, 241. In response, Yout set forth nine pages that describe a convoluted, multi-step process whereby someone supposedly can—in violation of YouTube's Terms of Service—download video and music files for copyrighted music videos on YouTube using a web browser, JA-44–52 (SAC ¶¶ 62–74). Thus, Yout alleges that a user must:

1.  Access a particular video on YouTube through the Chrome browser, as opposed to another browser or the YouTube app, JA-44 (SAC ¶ 62);

2.  Select "View" from the Chrome menu bar, JA-45 (SAC ¶ 65);

3.  Select "Developer," *id.*;

4.  Select "Developer Tools," which opens a new layout including the code that operates the website and the YouTube video player, JA-45–46 (SAC ¶¶ 65–66);

5.  Sort files in the main window by file size in the "Size" column, JA-46 (SAC ¶ 67);

6.  Highlight the first of the largest files, JA-47 (SAC ¶ 68);

7.  "[O]bserve the 'Request URL,' and copy it," *id.*;

14

8. Paste the "Request URL" into a new, distinct Chrome window or tab, JA-48 (SAC ¶ 69);

9. Identify a "*sequence of numbers*" following the text "range=" in the "Request URL," *id.* (emphasis added);

10. "*[M]odif[y]*" the "sequence of numbers" "to begin at 0 and end at a much larger number," *id.* (emphasis added);

11. "[C]lick[] 'return' or 'enter' . . . to access the modified 'Request URL,'" at which point "a full-size video, albeit without sound, appears," JA-49 (SAC ¶ 70);

12. Use a menu in this modified player to select "Download," JA-50 (SAC ¶ 71); and

13. Repeat the same process to access and download the audio file for the work, JA-51 (SAC ¶ 73).

Yout admits that, "[t]o some, this [process] could appear complicated." JA-52 (SAC ¶ 75). From the perspective of the ordinary user, that is an understatement, to say the least.

Yout alleges that its service "enables a person to complete the process described" in the SAC, "but in fewer steps." JA-55 (SAC ¶ 79). Yout also incorporates by reference into its complaint, JA-58 (SAC n.5), and the district court took judicial notice of, JA-239 (Order at 5 n.5), a letter from the Electronic

15

Frontier Foundation (EFF) that provides an additional description of YouTube's technology (and how Yout interacts with it), JA-281 (EFF Letter).

### C. Yout's Allegations Make Clear YouTube Employs A Signature Mechanism And Yout Bypasses It

That Yout's technology is used for circumvention is clear from its own allegations and judicially noticeable documents. Yout concedes there is "technology . . . at play" when "an individual visits the YouTube website to watch a video." Br. At 34. According to Yout, the YouTube technology includes a "signature mechanism" (which Yout describes as "referred to by [the] RIAA as a 'rolling cipher'"). JA-57–58 (SAC ¶ 98); JA-281 (EFF Letter). When a user visits a YouTube video, YouTube's servers send a JavaScript program, embedded in the YouTube video player, to the user's web browser. JA-282. That program "calculates a number," *id.*—*i.e.*, the "signature value," JA-57–58 (SAC ¶ 98)—which "then forms part of the [URL] that the user's browser sends back to YouTube to request the actual video stream," JA-282.

Yout alleges how to identify this signature value: it is the numbers following the text "range=." JA-48 (SAC ¶ 69). Yout then alleges that this range must be "*modified*" to access and download the video and audio files. JA-48–49 (SAC ¶¶ 69–70). In other words, a user cannot download a video on YouTube without bypassing the "signature mechanism" (or "rolling cipher") by changing the YouTube-assigned signature value. Critically, as the district court explained, the

16

fact that Yout alleges that the signature value must be modified to gain access to the downloadable file leads to only one plausible conclusion—that otherwise that file would be restricted.  JA-258 (Order at 24).

## III.  Efforts To Counter Today's Music Piracy

### A.  Stream-Ripping Services Short-Circuit The Ad-Supported Streaming Market

Yout's complaint paints its service as harmless, merely "allow[ing] a user to time shift content."  JA-42 (SAC ¶ 46).  That description is implausible.  As Yout's complaint admits, YouTube is an *on-demand* streaming service (not like a radio, or over-the-air TV)—a user can "search for" and then instantly "view" "any number" of music videos.  JA-44 (SAC ¶ 62).  YouTube pays content creators through revenues earned, either from charging premium subscribers for offline listening or from advertising.

Yout undermines this market.  As Yout alleges, its users who download digital music files have no need to subscribe to premium streaming services (including YouTube's premium service which permits offline listening); or to "visit[] [the ad-supported and revenue-generating YouTube platform] on which the original content resides."  JA-41 (SAC ¶ 44).  Thus, when a user uses Yout to create an unauthorized download of a music recording, the user has no need to stream the video on YouTube, depriving copyright owners of the advertising revenue.

**B.    RIAA Combats Piracy By Sending Anti-Circumvention Notices To Google**

RIAA is the trade association that supports and promotes the creative and financial vitality of the recorded music industry.  JA-36–37 (SAC ¶¶ 3–4).  Among other things, RIAA helps its members combat the scourge of copyright piracy.  Stream-ripping services have become a substantial source of music piracy.  *See, e.g.*, *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 349 (4th Cir. 2020) (describing hundreds of millions of visitors to stream-ripping websites).

RIAA's anti-piracy work includes notifying online service providers when their services are being used for unlawful purposes.  Google provides a webform process for copyright owners and their representatives to submit notices of unlawful uses.  *See* JA-26–32 (Compl. Exs. A–C).

In October 2019 and June 2020, RIAA sent "anti-circumvention notice[s]" regarding Yout's service to Google.  JA-55–56 (SAC ¶¶ 83–88).  The notices read:

> To our knowledge, the URLs provide access to a service (and/or software) that circumvents YouTube's rolling cipher, a technical protection measure, that protects [RIAA] members' works on YouTube from unauthorized copying/downloading . . . .

JA-55–56 (¶¶ 84, 86, 88); *see also* JA-26–32.  Yout claims these notices "allege violations of 17 U.S.C. § 1201(a)."  *Id*. JA-56 (SAC ¶ 89).  Yout further claims that "Google delisted Yout based on [RIAA's] misrepresentations" and that it has suffered damages and harm.  JA-63–64 (SAC ¶¶ 143–44).

18

## C. Courts Recognize That Stream-Rippers Violate Anti-Piracy Laws

Like the United States, countries around the world have passed anti-circumvention laws (similar to the DMCA) to implement the World Intellectual Property Organization Copyright Treaty within their own borders. *See* S. Rep. No. 105-190, at 2, 5–6 (describing how Title I of the DMCA implements the Treaty).

Yout has faced anti-circumvention lawsuits outside the United States, where courts and law enforcement have uniformly concluded that Yout's service violates those countries' equivalents to the DMCA. *See, e.g.*, JA-138–60 (translation of Danish Court Decision) (finding Yout's service violated Danish anti-circumvention law because, *inter alia*, "Yout.com helps users of the service make illegal copies of musical works" by circumventing "cipher" technology); Chris Cooke, *Yout Blocked in Brazil Again Following Criminal Copyright Complaint*, Complete Music Update (Nov. 25, 2021), https://completemusicupdate.com/article/yout-blocked-in-brazil-again-following-criminal-copyright-complaint/.

Courts have reached the same conclusion regarding technology similar to Yout's, both in the United States and abroad. *See, e.g.*, *UMG Recordings, Inc. v. Kurbanov*, No. 1:18-cv-957 (CMH/TCB), ECF No. 139 at 8–11, 14–16, 20–21 (E.D. Va. Dec. 16, 2021) (recommending default judgment against stream-ripping service), *report and recommendation adopted*, ECF No. 144 (E.D. Va. Feb. 10, 2022); JA-161–71 (translation of Hamburg Regional Court) (finding service

19

violated German anti-circumvention law); Chris Cooke, *Record Industry Welcomes Ruling Against Youtube-dl in German Courts*, Complete Music Update (Apr. 4, 2023), https://completemusicupdate.com/article/record-industry-welcomes-ruling-against-youtube-dl-in-german-courts/ (reporting on German court decision involving similar service).

## IV. Procedural History

### A. Yout's Lawsuit Against The RIAA

Yout filed this lawsuit on October 25, 2020, seeking a declaration that its service did not violate section 1201 of the DMCA. JA-10–23 (Compl.). Yout also asserted claims for violation of section 512(f) of the DMCA and for business disparagement and defamation per se. *Id.* RIAA filed two rounds of motions to dismiss.

In its original and amended complaint, Yout conspicuously failed to plead any details about how YouTube or Yout's service worked. *See* JA-12 (Compl. ¶ 23) (alleging only that "Yout's software program allows a user to record the audio of a streamed video [on YouTube] and store it locally on the user's computer in the form of an MP3 file"). In granting RIAA's motion to dismiss the First Amended Complaint with leave to amend, the district court specifically instructed Yout to plead greater detail about the technology at issue and how Yout's service

works.  JA-117–18.  The pending Second Amended Complaint is Yout's *third*
attempt to state a claim.  JA-36–68 (SAC).

**B.** **The District Court's Opinion Dismissing Yout's Second Amended
Complaint**

In dismissing Yout's Second Amended Complaint, the district court issued a
carefully reasoned opinion applying section 1201 to Yout's allegations.  JA-235–
80 (Order).

1.   The District Court Found That Yout's Own Pleading
     Established A "Technological Measure" That Is "Effective"

The district court used the plain text to define "technological measure" under
section 1201(a)[3] as a technology that "controls access," *i.e.*, "restrain[s] a YouTube
user's freedom or ability to access the location where downloadable files are stored
and download them."  JA-247–49, 251 (Order at 13–15, 17).  The district court
found that Yout's own allegations established that YouTube had a technological
measure:  the "signature value."  JA-256–59 (Order at 22–25) (citing JA-41 (SAC
¶ 39)).

In briefing before the district court, Yout contested whether YouTube had a
technological measure that could fall within section 1201's statutory definition.

---

[3] Yout argues the district court committed "clear error" by supposedly focusing on
section 1201(a)(1), rather than section 1201(a)(2).  Br. at 36–39.  Yout
mischaracterizes the district court's analysis.  *See* JA-247–53 (Order at 13–19).
The first two elements of a 1201(a)(1) and 1202(a)(2) claim are identical—whether
the tool is used for circumvention.

*See* JA-246 (Order at 12) (citing JA-57–58 (SAC ¶¶ 96–102)). The district court therefore conducted a meticulous analysis of Yout's allegations about the technology at issue, as well as the necessary inferences from those allegations. JA-253–59 (Order at 19–25). In particular, the district court cited Yout's allegations that the "signature value," *i.e.*, the series of number after "range=," was what the browser "sends . . . back to YouTube to initiate the video stream" and Yout's allegations that the value required modification to reach the "post-modification player" from which Yout enables access to the downloadable file. JA-257–58 (citing SAC ¶¶ 68–72, 98). Drawing the necessary and reasonable inference, the district court explained: "Because Yout alleges that the download option only appears in the post-modification player window and will not work without modifying the 'range=' value, I infer from the allegations that the 'signature value' must constitute an access control." JA-258–59 (Order at 24–25).

The district court further concluded that Yout's allegations established the technological measure was "effective" under section 1201(a)(3)(B) because, in the ordinary course, YouTube requires "the application of information," "a process," or "a treatment" that functions to control access. JA-262–63 (Order at 28–29). Specifically, YouTube employed a "process" using the signature value to "restrict" access to YouTube content and "direct" users to stream content. JA-263 (Order at 29) (citing JA-57–58 (SAC ¶ 98)).

22

2.     The District Court Found That Yout's Own Pleading
       Established Circumvention

The district court then applied the statutory definition of circumvention to

Yout's allegations.  *See* JA-264–65 (Order at 30–31).  Circumvention includes

steps taken "to avoid, bypass, remove, deactivate, or impair a technological

measure."  17 U.S.C. § 1201(a)(3)(A); *see also id.* § 1201(b)(2)(A) (similar).  The

district court found that Yout's allegations amounted to circumvention, either

"avoid[ing]" or "bypass[ing]," because the SAC alleges that Yout's technology

requires *modifying* the signature value in YouTube's source code to access and

download a file.  JA-266 (Order at 32).  Relevant, but not dispositive, to the district

court's analysis was that in the *ordinary course* a YouTube user only streams, but

cannot access or download, the underlying file.  JA-261–62 (Order at 27–28).

3.     The District Court Found That Yout Failed To Plausibly Plead
       That It Does Not Violate The Anti-Trafficking Provisions

Turning to the anti-trafficking provisions, the district court found that Yout

did not state a plausible claim for relief that its service does not fall within at least

one of the disjunctive provisions:

- Yout failed to plausibly allege that its website is not designed to circumvent

  YouTube's technological measures.  JA-272 (Order at 38) (citing 17 U.S.C.

  § 1201(a)(2)(A)).  Rather, Yout itself pled that its platform was designed to

  "create," "preserv[e]," and "save" a local copy of certain web content,

23

including copyrighted audio, video, and audio/video content, "on the person's computing device." *Id.*; JA-40–41 (SAC ¶¶ 34, 38, 43).

- Yout did not plausibly allege that its technology had other commercially significant purposes other than to circumvent YouTube's technological measures. JA-273 (Order at 39) (citing 17 U.S.C. § 1201(a)(2)(B)). Yout alleges that it derives profit from its service downloading streaming audio, video, and audio/video files, and it sells advertisements and "pro" subscriptions to its service. *Id.*; JA-40, 66 (SAC ¶¶ 37, 165).

- Yout did not plausibly plead that it does not market its technology to circumvent technological measures. JA-273 (Order at 39) (citing 17 U.S.C. § 1201(a)(2)(C)). To the contrary, Yout's website describes itself as a "stream recording tool." JA-273 (Order at 39); JA-40 (SAC ¶ 37).

The district court also rejected Yout's attempt to distinguish its conduct as non-circumventing by alleging purportedly non-infringing uses of its platform, noting that "downstream users' lawful or fair use of a platform does not relieve that platform from liability for tracking in a circumventing technology." JA-273 (Order at 39) (citing *321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085, 1097 (N.D. Cal. 2004)).[4]

---

[4] The district court also dismissed Yout's section 512(f) claim because it does not apply to anti-circumvention notices, JA-274–76 (Order at 40–42), and Yout's

## SUMMARY OF ARGUMENT

Yout's claim for declaratory relief under section 1201 fails because, as the district court correctly found, Yout's allegations make clear that it traffics in circumvention technology, violating 17 U.S.C. § 1201(a)(2). Yout circumvents an effective technological measure by "modif[ying]" the "signature value" in YouTube's "signature mechanism" to gain access to the underlying copies of the audio and visual files that comprise the music video copyrighted work. JA-57 (SAC ¶ 98); JA-48–49 (SAC ¶¶ 69–70). Yout further traffics in circumvention technology: the service is primarily designed and marketed to enable users to avoid and bypass the otherwise-extant restrictions on access, and the service has no other commercially significant purpose or use. The district court did not have to analyze Yout's potential liability under section 1201(b)(1) to determine that Yout could not establish the absence of any section 1201 violation. But even if this Court considers section 1201(b)(1), Yout violates that section as well.

None of Yout's arguments overcome this result:

- Section 1201 does not have an *intent* requirement. No factual issues are necessary for discovery or trial.

---

business disparagement and defamation per se claims because Yout failed to plausibly allege falsity, JA-277–78 (Order at 43–44).

- The fact that users can access streamed performances of music videos on YouTube does not change the fact that Yout provides unauthorized access to and unauthorized downloads of the underlying audio and video files that comprise the copyrighted works.

- The same technology can constitute both an access-control and copy-control measure. Yout waived its Section 1201(b) arguments, but an analysis under that subsection leads to the same result.

- Yout's reliance on cases holding there was no access control where a user could access the copyrighted work without encountering any technological measure is unavailing. Yout's own allegations make clear that Yout's technology encounters the signature mechanism and interacts with it to access the copyrighted work.

- Yout's claim that it "uses" YouTube's technology in the manner YouTube intended is contrary to Yout's own allegations and common sense. The manner in which Yout operates and bypasses YouTube's technological protection measures is not how the ordinary user uses YouTube.

Yout's section 512(f) claim fails because that provision does not apply to notices, like RIAA's, that assert violations of section 1201.

Yout's state law defamation claims fail because it cannot plead that RIAA's statements were false and for independent reasons.

26

## STANDARD OF REVIEW

The Court "review[s] *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6) . . . ." *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1076 (2d Cir. 2021).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Evaluating plausibility is a "context-specific task" that requires the Court "to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). The Court must consider "the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

Yout repeatedly argues that the district court could not resolve its claims without discovery and expert testimony. Br. at 3, 45, 56–57, 59, 62, 66. But "[a]s the Supreme Court has emphasized, a plaintiff must allege facts supporting a plausible claim before being entitled to discovery and cannot hide behind broad legal conclusions to satisfy the pleading requirements." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022).

27

**ARGUMENT**

## I.     Yout's Section 1201 Claim Fails Because Its Own Allegations Establish That Yout Traffics In Circumvention Technology

To establish its entitlement to declaratory relief under Section 1201, Yout would have to prove that it does not violate *any* of the prohibitions of that statute. The reality is that it violates *all* of the prohibitions.  For purposes of this appeal, it is sufficient that Yout's allegations plainly establish that it violates section 1201(a)(2)'s prohibition on trafficking in technology that circumvents access-control measures, requiring dismissal of the declaratory relief claim.

This analysis involves three questions as applied to Yout's allegations: (A) whether YouTube employs a technological measure that effectively controls access to copyrighted works; (B) whether the use of Yout's service circumvents such measures; and (C) whether Yout is liable for trafficking circumvention technology under section 1201(a)(2).  The answer to each is an easy yes—a stream-ripper cannot plausibly plead that it does not violate the anti-circumvention provisions of the DMCA.

The sections below track the order of the analysis and respond as applicable to Yout's arguments under the heading to which they pertain.

**A.** **The Allegations Establish YouTube Employs A "Technological Measure" That "Effectively Controls Access" To Copyrighted Works**

1. Section 1201 "Access-Control" Provisions Apply To Technology That Restrains A User's Ability To Access The Copyrighted Work

Contrary to Yout's claim, the district court did not "assum[e] the existence of" a technological measure, Br. at 25; rather, it conducted a thorough analysis of the text, structure, and purpose of the DMCA, as well as precedent, and applied that law to Yout's complaint. Based on this analysis, the district court concluded that a technological measure need only *control access* to the work, which YouTube's signature mechanism did. JA-251, 253–54 (Order at 17, 19–20).

First, the district court looked to the plain text of the statute to define a "technological measure" that "controls access" to be technology that "restrain[s] a YouTube user's freedom or ability to access the location where downloadable files are stored and download them." JA-251 (Order at 17); *see also Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012) (courts "begin with the text of the statute to determine whether the language at issue has a plain and unambiguous meaning").

Second, the district court found that the definition was consistent with the context of the statute as a whole, which, as the district court concluded, makes clear that "it should be relatively easy for a technology to constitute a technological

29

measure." JA-251; *see In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 427 (2d Cir. 2009) (courts consider the text in "the specific context in which that language is used, and the broader context of the statute as a whole"). Because an "effective" technological measure must have some meaning in addition to technological measure, *see* 17 U.S.C. § 1201(a)(3)(B), the degree to which technology must function to control access to qualify as a technological measure is necessarily low. *See Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 318 (S.D.N.Y. 2000) ("[A technological measure] 'effectively controls access' . . . whether or not it is a strong means of protection.").

Third, the district court found that the statute's focus on restraining, limiting, or otherwise controlling access is consistent with this Court's and other courts' application of section 1201 to measures that function to limit *how* the work can be accessed. *See, e.g.*, JA-248–49 (Order at 14–15); *Corley*, 273 F.3d at 440–41 (technological measure limited access to authorized DVD players); *Reimerdes*, 111 F. Supp. 2d at 318 (same); *VidAngel*, 869 F.3d at 864 (CSS and other protections permitted access for *viewing* but not *copying*); *Prudent Tr. Co. Ltd. v. Touray*, No. 2:14-cv-08965-RSWL-MAN, 2014 WL 12575854, at *5 (C.D. Cal. Nov. 25, 2014) (public website limited "unfettered access" through implementing technological measures). Accordingly, what matters is whether the "function" of the technological measure is to control access. *See, e.g.*, *Reimerdes*, 111 F. Supp. 2d

30

at 318 ("[A] technological measure 'effectively controls access' to a copyrighted work if its function is to control access.").

Yout attempts to complicate this straightforward interpretation by arguing for an extra-textual *intent* requirement: Yout argues this case involves a "disputed question of fact" because there is supposedly "no evidence [] that YouTube *intended* [the rolling cipher] to be a 'technological measure' designed to limit access or copying at all." Br. at 34 (emphasis added); *see also id.* at 35, 59, 61. No such requirement exists.

Nothing in the text, structure, or legislative history of the DMCA suggests that the entity that deploys the technological measure has to intend for it to fit within the definition of an effective technological measure.[5] The statute refers to "technological measure" passively, as something "that effectively controls access to" a copyrighted work or that "effectively protects a right of a copyright owner." 17 U.S.C. §§ 1201(a)(1)(A), (a)(2), (b)(1)–(2). A measure meets that definition or

---

[5] Likewise, and contrary to Yout's suggestion, it does not matter *who* employs the measure. Br. 1, 5. The statutory text is passive. *See, e.g.*, 17 U.S.C. § 1201(a)(2)(A) (referring to a "technological measure *that* effectively controls access to a work" (emphasis added)). Numerous cases construing the DMCA concerned circumstances where it was licensing organizations, with the assistance of DVD player manufacturers, that employed technological measures. *See, e.g.*, *Corley*, 273 F.3d at 437 (describing licensing scheme developed by studios for distributing CSS technology to DVD manufacturers); *RealNetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913, 918–19 (N.D. Cal. 2009) (same).

it does not, but there is no additional requirement to prove intent.  Congress knows how to include an intent requirement when it wishes to do so.  *See, e.g.*, 17 U.S.C. § 1202 (specifying intent required for claim for false copyright management information).  Yout provides no grounds for its invitation to this Court to "rewrite the statute that Congress has enacted."[6]  *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 130 (2016).

Even if this were an element, which it is not, the pleadings make obvious that YouTube intends that its users will not access the downloadable audio and video files.  *See, e.g.*, JA-127–28, 130 (YouTube TOS) (forbidding users from accessing content outside of the YouTube video player and from circumventing or interfering with the YouTube video player).

> ### 2. The Only Plausible Reading Of Yout's Allegations Is That YouTube's Rolling Cipher Is A Technological Measure That Effectively Controls Access To Copyrighted Works

Applying the statute to Yout's complaint, the only plausible reading of Yout's allegations is that the YouTube technology at issue *is* a "technological measure" within the meaning of the statute because it functions to control how

---

[6] Amicus curiae EFF claims that the use of the term "measure" creates an intent requirement, since one of the definitions of "measure" is "a step planned or taken as a means to an end."  EFF Br. at 4–8.  But even the definition that EFF cites defines "measure" passively.  The focus of the DMCA is on function, not intent.

YouTube users access the works (and also restricts them from copying said works). This is clear from the allegations themselves and no discovery is necessary:

- Yout concedes there is "technology" at play. Br. at 34; JA-57 (SAC ¶ 98).

- Yout's allegations also make clear that YouTube employs a "signature mechanism" that "derives" a "signature value," before the music video can be streamed. JA-57–58 (SAC ¶ 98).

- The signature mechanism controls or restrains user's ability to access the downloadable files for the music video, since the signature value has to be *modified* to access those files. *See* JA-48–49 (SAC ¶¶ 69–70).

This technology is also facially "effective" under 1201(a). It is well settled that whether a technological measure effectively controls access to a work for purposes of section 1201 must be assessed at the level of an "ordinary" or "average" consumer. *RealNetworks*, 641 F. Supp. 2d at 932 (effectiveness is judged from the perspective of the "ordinary consumer," not someone seeking to avoid or hack the technological measure); *see also Reimerdes*, 111 F. Supp. 2d at 318. Yout has not plausibly alleged that the average YouTube user bypasses YouTube's signature value. Rather, Yout's allegations establish that in the "ordinary course of its operation" the technological measure "requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B).

33

Specifically, Yout describes a "process" required via the "signature mechanism" to "request the actual video stream" in the ordinary course. JA-43–44, 51–52, 55–58 (SAC ¶¶ 61, 73, 76, 79, 91, 98, 102); JA-282. For the ordinary consumer using YouTube, this process results in a *stream* of the performance and not access to the files or a download. *RealNetworks*, 641 F. Supp. 2d at 932.

### 3. Yout's Arguments On Appeal Are At Odds With The Plain Text Of Section 1201 And On-Point Authority

None of Yout's other arguments changes the straightforward application of section 1201 to the allegations in the complaint.

#### (a) Yout's authorization to access argument is wrong

Yout claims section 1201(a) cannot apply because YouTube users already have "access" to the copyrighted works through watching music videos available on YouTube and because YouTube's Terms of Service show an "explicit grant of access permission." *See* Br. at 39–42. But these arguments fail.

First, Yout alleges that YouTube provides access to music videos for *streaming* through the YouTube video player. JA-45 (SAC ¶ 64); JA-127, 130 (YouTube TOS); JA-283 (EFF Letter). YouTube's limited *streaming* access is fundamentally different from providing *unrestricted* access to downloadable files.[7]

---

[7] Yout argues that the district court may have "incorrect[ly] . . . assum[ed]" the existence of "two separate types of files," one for streaming, one for downloading. Br. at 45 n. 4. Yout does not cite how it interprets the district court to have reached

34

Yout cites cases for the proposition that "[s]ection 1201(a) concerns itself *exclusively* with the question of *access* to copyrighted materials and not what happens to those materials once they are accessed."  Br. 39 (citing cases characterizing section 1201 as about "digital walls").  But the point of those cases is that section 1201(a) is independent of any *infringement*, *i.e.*, authorized or unauthorized *use* of the works after *authorized* access.  To the extent these cases deal with the question of limited vs. unrestricted access for purposes of section 1201(a), they are consistent with RIAA's view.  *See, e.g.*, *Corley*, 273 F.3d at 444 (finding circumvention, even though the purchaser of a DVD had authorization to view a performance of the work).

If section 1201(a) does not apply whenever a work can be streamed or viewed by the public more generally, then section 1201(a) would not apply to *any work* not behind a paywall on the internet.  The result would be an upending of ad-supported, freemium, and numerous other distribution models for copyrighted works that depend on providing some controlled access.  That is not what Congress intended.

Second, Yout claims that authorization contained in YouTube's Terms of Service is "fatal to the RIAA's arguments under § 1201(a)."  Br. at 42.  Yout

---

this conclusion.  It also does not matter—if there is one set of files, the allegations establish restrictions on the ability to access the underlying digital files.

misreads the terms. The same YouTube Terms of Service that Yout cites make this *limited* authorized access clear: there is a "license to access your Content *through* [YouTube]" and to make certain uses of that content "*only as enabled by a feature* of [YouTube]." (emphasis added) JA-127–28, 130. The limited license is not authorization to unrestricted access to the downloadable files of the works.

Legal precedent also overwhelmingly supports RIAA. For example, in cases involving the encryption technology placed on DVDs, courts rejected arguments that there is no section 1201(a) liability for decrypting a DVD's contents when consumers otherwise have authority to view the disc's contents with a DVD player. *See, e.g.*, *Corley*, 273 F.3d at 444 (rejecting argument that "an individual who buys a DVD has the 'authority of the copyright owner' to view the DVD, and therefore is exempted from the DMCA pursuant to subsection 1201(a)(3)(A) when the buyer circumvents an encryption technology in order to view the DVD on a competing platform (such as Linux)"); *VidAngel*, 869 F.3d at 853, 863–64 (finding "lawful purchasers have permission only to view their purchased discs with a DVD or Blu-ray player licensed to decrypt the [technological measures]," but not to "rip[]" the movie from the disc to upload a digital copy to a computer); *321 Studios*, 307 F. Supp. 2d at 1096 (rejecting that the DVD owner "has [the] authority of the copyright holder to bypass" and "decrypt CSS" because the owner is permitted to view the contents of a DVD on an authorized player). Watching a DVD on an

authorized player is not the same thing as accessing the underlying files that comprise the copyrighted works contained on the disc. *See Corley*, 273 F.3d at 444; *VidAngel*, 869 F.3d at 853, 863–64. So, too, watching the streamed performance of a music video through YouTube is not the same thing as accessing the downloadable files that comprise the copyrighted work.

> (b)    *Section 1201(b) does not undermine the district court's analysis*

Yout argues that section 1201(b) highlights the district court's purported error in defining a technological measure under section 1201(a) as a technology that "controls access." In Yout's view, the district court did not properly distinguish section 1201(a) and section 1201(b). Br. at 32–33, 45–46, 54–55. Yout neglects that while *some* technological measures will only control access and some will only control copying, it is possible for the same technological measure to control both—which is the case here.

The Ninth Circuit in *VidAngel* squarely rejected the very same argument that You makes here. The defendant there circumvented the technological protection measures on DVDs to gain access to the underlying digital files containing copies of the copyrighted works; upon gaining such access, the defendant then made unauthorized copies of the files. *VidAngel*, 869 F.3d at 863. The defendant argued that, because the plaintiffs-motion picture studios "object[ed] only to [defendant's] decryption [of the measures] to copy" the movies, the defendant's only possible

37

liability could lie under the copy-control provision in section 1201(b), not the access-control provisions in section 1201(a)(1). *Id.* at 863–64. The Ninth Circuit flatly rejected this argument:

> [T]he statute does not provide that a [technological measure] cannot serve as both an access control and a use control. Its text does not suggest that a defendant could not violate both § 1201(a)(1)(A), by circumventing an access control measure, and § 106, by, for example, reproducing or publicly performing the accessed work. Indeed, this court has acknowledged that a [technological measure] could "both (1) control[ ] access and (2) protect[ ] against copyright infringement."

*Id.* at 864 (citation omitted).

*VidAngel* is consistent with the DMCA case law, the DMCA's legislative history, and commentary on the statute. *See MDY v. Blizzard Ent., Inc.*, 629 F.3d 928, 946 (9th Cir. 2010) ("[I]f a copyright owner puts in place an effective measure that both (1) controls access and (2) protects against copyright infringement, a defendant who traffics in a device that circumvents that measure could be liable under both § 1201(a) and (b)."); *see also* S. Rep. No. 105-190, at 12 (suggesting that "*many*"—but not all—"devices will be subject to challenge only under one of the subsections" (emphasis added)); Nimmer on Copyright § 12A.06[D][2][b] ("[T]he concrete difference between [sections 1201(a)(2) and 1201(b)(1)], in actual practice, appears tenuous to non-existent.").

*(c)    Yout relies on inapposite case law*

Yout's reliance on *Lexmark International, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004), and *Digital Drilling Data Systems, LLC v. Petrolink Servs.*, 965 F.3d 365 (5th Cir. 2020), *see* Br. at 47–50, is misplaced.

*Lexmark* concerned whether an "authentication sequence" controlled access to the source code for Lexmark's Printer Engine Program. 387 F.3d at 546. The Sixth Circuit held it did not because "[a]nyone who buys a Lexmark printer may read the literal code of the Printer Engine Program *directly* from the printer memory, *with or without* the benefit of the authentication sequence." *Id.* (emphasis added). *Digital Drilling* concerned whether a USB dongle and Interface Process acted as an access control to DataLogger's database. 965 F.3d at 375–76. The Fifth Circuit concluded they did not because one could access the database without encountering those measures. *Id.* at 376.

*Lexmark* and *Digital Drilling* are inapposite. In both cases, the courts found there was nothing that controlled access to copyrighted work because a user need not encounter any particular technological measure. In this case, by contrast, Yout's own allegations and judicially-noticed material make clear that Yout's technology "encounters [YouTube's] signature mechanism" that it must "read[] and interpret[]" to "derive[] the 'signature' value" so that the copyrighted work

39

may be accessed. JA-283 (EFF Letter); JA-57–58 (SAC ¶ 98). Unlike the circumstances in *Lexmark* and *Digital Drilling*, Yout does not allege that users can access the downloadable files *without* modifying the signature value. Were it otherwise, there would be no need for Yout to "modif[y]" the signature value. *See* JA-44–52 (SAC ¶¶ 62–74).

It follows that Yout's attempt to equate YouTube to an unlocked house is wrong. Br. at 49, 50 (citing *Lexmark*, 387 F.3d at 547; *Digit. Drilling Data Sys.*, 965 F.3d at 376–77). Yout's own allegations establish that YouTube *does* have a lock—the "signature mechanism"—and Yout must modify YouTube's "signature value" to gain access to the underlying works. *Cf. Hattler v. Ashton*, No. LA CV16-04099 JAK (KSx), 2017 WL 11634742, at *6 (C.D. Cal. Apr. 20, 2017) (rejecting argument that because works were "publicly available for streaming," "the 'door' to the Works was open" and finding instead the analogy would be "allowing members of the public access to the locked front door of your home, [which] does not constitute consent to their manipulating the lock in a way that allows them to enter without your permission").

> (d) *Interpreting "technological measure" as a control on access does not amount to a control on how a person experiences or uses content*

Amicus curiae GitHub, Inc. claims that the district court's interpretation of section 1201(a) amounts to a control on how a person experiences or uses content,

rather than a control on access.  GitHub Br. at 6.  But that is simply not true.[8]

There is no section 1201(a) liability for using, for example, an iPhone to record a

laptop playing a music video on YouTube, because there is no technological

measure limiting such access, or any circumvention of that technological measure.

The examples provided by GitHub, Inc., such as translation or accessibility tools,

*see* GitHub Br. at 7–12, would also not run afoul of section 1201(a).  For instance,

using a browser plug-in to change the way that YouTube's website appears, such

as by changing the site's colors to dark mode or making the text easier to read for

those with dyslexia, is unlikely to involve a signature mechanism *at all*, let alone

modifying that mechanism to provide access to an underlying digital file for a

copyrighted work.  *Cf. Lexmark*, 387 F.3d at 546; *Digit. Drilling Data Systems*,

---

[8] Moreover, Congress anticipated and accommodated for the need for potential exemptions to section 1201(a) by adopting a rulemaking procedure to exempt any class from section 1201(a)'s prohibition if it is determined that noninfringing uses by persons who are users of copyrighted works in that class are, or are likely to be, adversely affected by the prohibition against circumvention.  17 U.S.C. § 1201(a)(1)(B)–(D).  The statute also contains certain permanent exemptions to permit specified uses.  *See id.* § 1201(d) (exempting certain activities of nonprofit libraries, archives, and educational institutions); *id.* § 1201(e) (exempting lawfully authorized state and federal investigations); *id.* § 1201(f) (exempting certain "reverse engineering" activities); *id.* § 1201(g) (exempting certain types of research into encryption technologies); *id.* § 1201(h) (exempting certain activities to prevent the "access of minors to material on the internet"); *id.* § 1201(i) (exempting certain activities "solely for the purpose of preventing the collection or dissemination of personally identifying information"); *id.* § 1201(j) (exempting certain acts of "security testing" of computers and computer systems).

965 F.3d at 375–76.  Regardless, those facts are not before the Court in this case
and provide no basis for reversing the District Court's ruling.

### B.    The Allegations Establish That Yout's Service Circumvents YouTube's Effective Technological Measure

Yout cannot avoid the conclusion that it "bypass[es] . . . a technological
measure," 17 U.S.C. § 1201(a)(3)(A).  Its allegations establish that it does—Yout
"modifie[s]" the "signature value" to gain access to the work and download it.  JA-
48–49 (SAC ¶¶ 69–70).   Yout tries to get around this fact by arguing that it simply
"engages with YouTube's technology . . . in precisely the manner that YouTube
intends the public to engage."  Br. at 42.  According to Yout, YouTube "generates
a small bit of Javascript code that it intends the receiving computer to run in order
to access the file being provided by YouTube."  *Id.*  Yout claims this is not
circumvention, but "merely the use of YouTube's technology in precisely the way
YouTube intends."  *Id.* at 43.

Yout's contention strains credulity and certainly does not meet the
plausibility standard.  Yout ignores its own allegations about the elaborate process
required to gain unauthorized access to the underlying audio and visual files, as
well as common sense.  The procedure Yout describes in its complaint is *not* the
way an ordinary user uses YouTube.  *See RealNetworks*, 641 F. Supp. 2d at 932
("ordinary consumer" standard).  Yout's reliance on *DISH Network L.L.C. v.
World Cable Inc.*, 893 F. Supp. 2d 452 (E.D.N.Y. Sept. 28, 2012), is therefore

42

misplaced. In *DISH*, defendant's agents used DISH's authorized cable boxes to rebroadcast satellite programming without authorization. *Id.* at 456. The court held the use of the boxes was not circumvention because the cable boxes continued to work according to their "normal process." *Id.* at 465. By contrast, here, YouTube's "normal process" involves streaming music videos to the end user without changes to the "signature value." The normal process results in the end user viewing a stream, not obtaining a download. Yout, rather than using that normal process, uses an unauthorized "automated" process to "modif[y]" the signature value of a URL in YouTube's source code to permit its users to access and download a local copy. JA-40–42, 48–49, 58 (SAC ¶¶ 34–45, 69, 102). Indeed, there would be no need for Yout to exist if it simply enabled YouTube to work according to its normal process.

Courts in other DMCA cases have rejected arguments similar to Yout's argument. For example, RealNetworks argued that it was not circumventing because it simply "utiliz[ed] [] the CSS authentication codes and algorithms" that had been licensed. *RealNetworks*, 641 F. Supp. 2d at 935. The court squarely rejected that argument: "[t]hat [RealNetworks] may have initially gained lawful access to the CSS keys . . . does not mean that [RealNetworks] is thereby exculpated from DMCA liability forever more." *Id.* at 934; *see also Corley*, 273 F.3d at 460, *aff'g Reimerdes*, 111 F. Supp. 2d at 346 (similar); *see also 321*

43

*Studios*, 307 F. Supp. 2d at 1098 (unauthorized actor's trafficking in technology that "uses the authorized key to unlock the encryption" is "avoid[ing] and bypass[ing]" the technological measure). The same reasoning applies here—Yout cannot escape liability by describing its circumvention as "use" of the signature mechanism to identify and modify the signature value. Technology need not "break[]" the protection measure for one to be liable for circumvention. *RealNetworks*, 641 F. Supp. 2d at 934.

The other cases cited by Yout all stand for the inapposite proposition that the use of a password (with or without authorization) is not circumvention because it is using the password mechanism in the ordinary course. *See R. Christopher Goodwin & Assocs. v. Search, Inc.*, No. C.A. 19-11290, 2019 WL 5576834, at *3 (E.D. La. Oct. 29, 2019); *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD)(BCM), 2017 WL 696126, at *18 (S.D.N.Y. Feb. 15, 2017); *R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 878, 889 (N.D. Ohio 2009). As the *R.C. Olmstead* court explains, a username and password are "the approved methodology [] to access the software," and so their use does not circumvent a technical measure. 657 F. Supp. 2d at 889.

## C. The Allegations Establish That Yout Traffics In Circumvention Technology

Yout sought a single count of declaratory relief that its service did not violate section 1201. Finding that Yout's allegations establish a violation of *any*

one of the disjunctive anti-trafficking provisions therefore renders its claim implausible. The district court correctly found that Yout could not state a claim under any of the three disjunctive provisions in section 1201(a)(2). JA-271–74.

        1.   <u>Yout Failed to Plead A Section 1201(b) Claim, And The Claim Would Fail Even If Yout Had Properly Raised It</u>

Yout claims that its lawsuit also seeks a declaration that it did not violate section 1201(b). *See* Br. at 53–56. But Yout's complaint makes no express reference to section 1201(b)—just section 1201 generally. Yout failed to separately plead a section 1201(b) claim. *See* Fed. R. Civ. P. 10(b) (requiring separate claims in separate counts). Yout's entire case is based on RIAA's notices and Yout *specifically* alleged that RIAA's notices alleged violations of section 1201(a). *See* JA-56 (SAC ¶ 89).

The district court correctly found the issue waived because Yout failed to sufficiently raise the issue, including in its Memorandum in Opposition. JA-274 (Order at 40 n.14). Yout now cites the hearing transcript to assert that it did not waive the argument. But courts need not consider an argument raised for the first time at oral argument, *see, e.g.*, *Saray Dokum Ve Madeni Aksam Sanayi Turizm A.S. v. MTS Logistics, Inc*., No. 17 Civ 7495 (JPC), 2021 WL 1199470, at *7 (S.D.N.Y. Mar. 30, 2021) (collecting cases), and "[i]ssues not sufficiently argued

in the briefs are considered waived and normally will not be addressed on appeal," *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).[9]

Further, because Yout violates section 1201(a)(2), there is no need for this Court to reach Yout's arguments under 1201(b). Yout's plea for a reversal as to 1201(b) amounts to an improper request for an advisory opinion. *See United States v. Broadcast Music, Inc.*, 275 F.3d 168, 178 (2d Cir. 2001) (federal courts lack power to render advisory opinions).

Regardless, any such claim would fail on its merits. A technological measure under section 1201(b) "protects a right of a copyright owner under this title"—*i.e.*, it functions to protect the copyright holder's right to reproduce, prepare derivative works, distribute copies, or perform publicly. *See* 17 U.S.C. §§ 106, 1201(b)(1)(A), (2)(B). Such a definition is consistent with section 1201(b)'s definition of an "effective" technological measure, which is a measure that "in the ordinary course of its operation, *prevents, restricts, or otherwise limits* the exercise of a right of a copyright owner under [Title 17]." *See* 17 U.S.C. § 1201(b)(2)(B) (emphasis added).

---

[9] To the extent Yout's counsel raised section 1201(b) at the hearing, counsel repeatedly implied that Yout would have a harder argument to prove under section 1201(b). *See*, *e.g.*, JA-219 (stating only that there might "arguably" be a technological measure under section 1201(b)).

Yout's allegations equally establish that YouTube's "signature mechanism" functions as a "copy control," preventing users from downloading the file of the copyrighted work that provides the stream. *See* JA-44–52 (SAC ¶¶ 62–74). In the ordinary course of its operation, YouTube's "signature mechanism" restricts or limits users' ability to make copies of music videos streamed on YouTube. JA-44–52 (SAC ¶¶ 62–74); *cf.* 17 U.S.C. § 1201(b)(2)(B). Yout's service bypasses the signature mechanism by modifying the "signature value" to enable downloading YouTube's backend files. *Id.*; *cf.* 17 U.S.C. § 1201(b)(2)(A) (circumventing means "avoiding, bypassing, removing, deactivating, or otherwise impairing a technological measure").

Yout tries to avoid this result with respect to section 1201(b), by claiming there is no "right" of the copyright owner to protect because the use of the download is purportedly fair use, comparing its technology to the VCR at issue in *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 446 (1984) ("*Sony/Betamax*"). Br. at 60–61. That argument is wholly inconsistent with settled case law—including from this Court—rejecting similar claims that downloading copyrighted songs can be defended as fair use on a theory of "shifting" outside the specific facts of *Sony/Betamax*. *See Corley*, 273 F.3d at 459 ("Fair use has never been held to be a guarantee of access to copyrighted material in order to copy it by the fair user's preferred technique or in the format of the

original."); *VidAngel*, 869 F.3d at 862 ("The reported decisions unanimously reject the view that space-shifting is fair use under § 107."); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001) (rejecting Napster's argument that its "space-shifting" was fair use because "shifting" is fair use only if it "[does] not also simultaneously involve distribution of the copyrighted material to the general public"); *BMG Music v. Gonzalez*, 430 F.3d 888, 890–91 (7th Cir. 2005) (rejecting that fair use or *Sony/Betamax*'s "time-shifting" applied to downloading music files); *UMG Recordings, Inc. v. MP3.com, Inc.*, 92 F. Supp. 2d 349, 351 (S.D.N.Y. 2000) (rejecting space-shifting of MP3 files as "simply another way of saying that the unauthorized copies are being retransmitted in another medium—an insufficient basis for any legitimate claim of transformation").  In declining to adopt an exemption to the DMCA for "space-shifting," the Copyright Register explained that "the law of fair use, as it stands today, does not sanction broad-based space-shifting or format-shifting."  80 Fed. Reg. 65944-01, at 65960 (Oct. 28, 2015).

      2.    <u>Yout Failed To Plausibly Plead That Its Service Does Not Violate *At Least One Of* Section 1201's Anti-Trafficking Provisions</u>

Contrary to Yout's unsupported assertion that the district court "gave short shrift" to the three anti-trafficking requirements, Br. at 38, the district court methodically analyzed Yout's non-conclusory allegations under 17 U.S.C.

48

§§ 1201(a)(2)(A)–(C) as well and found that Yout had failed under *each* of the disjunctive subsections, JA-271–74.  While Yout's failure to plead plausible allegations under even one of these subsections would preclude Yout from stating a claim, Yout in fact failed under all three subsections.

First, Yout failed to plausibly plead that its service is not primarily designed or produced for circumventing YouTube's technological measure.  *See* 17 U.S.C. §§ 1201(a)(2)(A), (b)(1)(A); *see also* JA-272 (Order at 38).  Yout itself alleges that its service is designed to "create," "preserv[e]," and "save" a local copy of certain web content, including copyrighted audio, video, and audio/video content, "on the person's computing device."  JA-40–41 (SAC ¶¶ 34, 38, 43).  Yout's contentions on this point in its brief largely rehash its earlier arguments about the existence of a technological measure, *see* Br. at 56–62, and the purported need to know YouTube's intentions, *id.* at 61.  These arguments fail for the reasons discussed above.

Second, Yout failed to plausibly plead that its service has more than limited commercially significant purposes or uses other than circumvention.  *See* 17 U.S.C. §§ 1201(a)(2)(B), (b)(1)(B); *see also* JA-273 (Order at 39).  Yout argues that there are significant other commercial uses because "the software on which Yout operates has been widely recognized to have many legitimate uses, including for journalists, historians, and political activists around the world."  Br. at 64.  But

49

there are no such allegations in Yout's complaint. Instead, Yout alleges that its users might want a download for a "long flight." JA-43 (SAC ¶ 52). What matters for the analysis are *commercially* significant purposes of Yout's service. The district court correctly cited the profit Yout earns from selling advertisements and "pro" subscriptions. JA-273 (citing SAC ¶ 37).

Third, Yout failed to plausibly plead that it does not market its service for use in circumventing YouTube's technological measure. *See* 17 U.S.C. §§ 1201(a)(2)(C), (b)(1)(C); *see also* JA-273 (Order at 39). The reason Yout exists is to assist users in circumventing YouTube's technological measures that limit users to streaming, but not downloading, copyrighted sound recordings. Yout itself describes its service as a "*stream recording* tool." JA-40 (SAC ¶ 37). Yout further alleges it "created and operates a service by which a person can enter a url linked to . . . Web Content in certain limited formats and create a personal copy on the person's computing device." JA-40 (SAC ¶ 34). It perhaps goes without saying, but "Yout" is the first four letters of "YouTube," and Yout's logo features a "play" icon similar to the icon in YouTube's logo:




*See* JA-40 (SAC ¶ 36); JA-123 (YouTube TOS).

50

Yout's service is not a neutral camera or audio-recording device that exists separate from the technology it circumvents; it enables users to obtain a virtually perfect copy of the file. The service's entire purpose is circumvention. *See Corley*, 273 F.3d at 436 (describing how the DMCA's anti-circumvention provisions were motivated by concern that "a digital format brings with it the risk that a virtually perfect copy, *i.e.*, one that will not lose perceptible quality in the copying process, [that] can be readily made at the click of a computer control and instantly distributed to countless recipients").

## II. Yout's Section 512(f) Claim Fails Because That Section Does Not Apply To Claims Of Circumvention

The district court correctly found that Yout failed to state a claim for violation of 17 U.S.C. § 512(f). First, Yout's claim fails because section 512(f) does not create a cause of action based on alleged misrepresentations regarding *circumvention*. Section 512(f) provides a cause of action against "[a]ny person who knowingly materially misrepresents *under this section* . . . that material or activity *is infringing*." 17 U.S.C. § 512(f) (emphasis added); *see Twelve Inches Around Corp. v. Cisco Sys., Inc.*, No. 08 CIV. 6896 (WHP), 2009 WL 928077, at *3 (S.D.N.Y. Mar. 12, 2009) (statute "requires that the misrepresentation be 'under [section 512],' which deals exclusively with copyright infringement" (alteration in original)); *see also Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1004

(9th Cir. 2004) (section 512(f) is an "expressly limited cause of action for improper *infringement* notifications" (emphasis added)).

Section 512(f) "does not provide a cause of action for . . . misrepresenting" other kinds of liability, such as circumvention. *Arista Records, Inc. v. Mp3Board, Inc.*, No. 00 CIV. 4660 (SHS), 2002 WL 1997918, at *15 (S.D.N.Y. Aug. 26, 2002) ("misrepresenting that a service provider may be liable for hosting certain material," without specifically claiming infringement, is not actionable under section 512(f)); *Twelve Inches Around*, 2009 WL 928077, at *3 (alleged misrepresentations regarding trademark infringement are not actionable under section 512(f)). The single case on which Yout relies, *CrossFit, Inc. v. Alvies*, No. 13-3771 SC, 2014 WL 251760, at *3 (N.D. Cal. Jan. 22, 2014), is not to the contrary. That case involved CrossFit's allegedly false notice to Facebook that its *copyrights* had been *infringed* when the claims related to *trademark*. *Id.* at *2–3.

The plain language of the notices that RIAA sent to Google concern only *circumvention*:

> To our knowledge, the URLs indicated provide access to a service (and/or software) that *circumvents YouTube's rolling cipher*, a technical protection measure, that protects our members' works on YouTube from unauthorized copying/downloading . . . .

JA-55–56 (SAC ¶¶ 83–88) (emphasis added); JA 26–32 (Compl. Exs. A–C). Indeed, Yout necessarily concedes this fact. *See* JA-55–56 (SAC ¶¶ 83, 87) (alleging that RIAA sent "*anti-circumvention*" notices (emphasis added)). Yout

cannot change the facts (or transform a circumvention claim into a secondary copyright infringement claim), Br. at 66; *see also* JA-62–63 (SAC ¶¶ 136, 137).

Second, even if section 512(f) did apply (which it does not), Yout's claim still fails because Yout has not alleged any facts showing RIAA had "*actual knowledge* that it [was] making a misrepresentation of fact" when it sent the anti-circumvention notices to Google. *Cabell v. Zimmerman*, No. 09 Civ. 10134 (CM), 2010 WL 996007, at *4 (S.D.N.Y. Mar. 12, 2010); *accord Rossi*, 391 F.3d at 1004–05 (section 512(f) "impose[s] liability only [of] the copyright owner's notification is a *knowing misrepresentation*" (emphasis added)).

Yout alleged only that RIAA "knew" Yout's service "does not circumvent" and "knowingly misrepresented the nature of Yout's services." JA-63 (SAC ¶¶ 137–40). But these conclusory allegations, without any allegations of fact to back them up, are insufficient to plead a plausible claim under section 512(f). *See, e.g.*, *Nat'l Academy of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 433 (S.D.N.Y. 2021) (dismissing section 512(f) claim where there were no facts alleged from which the court could reasonably infer that plaintiffs had knowledge of the misrepresentation); *Ningbo Mizhihe I&E Co., Ltd. v. Does 1–200*, No. 19 Civ. 6655 (AKH), 2020 WL 2086216, at *3–4 (S.D.N.Y. Apr. 30, 2020) (dismissing section 512(f) claim where "there is insufficient material in the pleadings to support the inference that Plaintiff knew their

53

copyrights were not enforceable"); *Chevrestt v. Am. Media, Inc.*, 204 F. Supp. 3d 629, 632 (S.D.N.Y. 2016) (noting the complaint "contains no factual allegations supporting those conclusions (speculations?), such as showing that [the party that sent the notice] was confronted or otherwise made aware of its alleged[] [misrepresentation]," and dismissing DMCA claim).[10] Yout's claim that RIAA "knew" that Yout "does not circumvent" is particularly implausible in the face of numerous decisions around the globe finding that Yout's service and other stream-ripping services use circumvention technology. *See* Statement of the Case, Section III.C, *supra*.

Yout also claims the district court erred by requiring Yout to plead "state of mind" prior to any discovery. Br. at 66–67. But the law is clear that Yout must plead sufficient factual allegations that allow the court to draw the reasonable inference that RIAA had the requisite state of mind. *See Nat'l Rifle Ass'n of Am. v.*

---

[10] Nor did Yout plead the requisite state of mind by alleging RIAA "failed to . . . determine whether Yout's software platform would, in fact, circumvent [YouTube's] rolling cipher by testing the platform." JA-62 (SAC ¶ 135). Failing to investigate whether material or activity infringes (even negligently) does not satisfy section 512(f)'s knowledge requirement. *See, e.g.*, *Ningbo Mizhihe*, 2020 WL 2086216, at *3 (dismissing section 512(f) counterclaim where counterclaimant accused party of "failing to perform an adequate investigation of the available prior art"); *see also Cabell*, 2010 WL 996007, at *4 ("[N]egligence is not the standard for liability under section 512(f).").

*Vullo*, 49 F.4th 700, 713 (2d Cir. 2022) ("We accept as true factual allegations but not conclusions, such as statements concerning a defendant's state of mind.").

## III. Yout's Business Disparagement And Defamation Per Se Claims Fail For Reasons Independent Of Its Section 1201 Claim

The district court correctly found that Yout's business disparagement and defamation per se claims fail with its declaratory judgment claim:  If Yout's service is circumvention technology, then Yout necessarily cannot plausibly allege that RIAA made a false statement. *See, e.g.*, *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247, 251–52 (2d Cir. 2017) (applying New York defamation law, which also requires falsity, and finding that "when falsity is an element of a state defamation claim," a plaintiff in federal court must "plead facts that, if proven, would allow a reasonable person to consider the statement false" to overcome a motion to dismiss); *Verragio, Ltd. v. AE Jewelers, Inc.*, No. 15-cv-6500, 2017 WL 4125368, at *7 (S.D.N.Y. Aug. 23, 2017) (dismissing New York defamation counterclaim where defendants did "not present any well-pleaded factual allegations suggesting that the [contested] statement [was] false" and "merely offer[ed] conclusory assertions").

Yout's business disparagement claim fails for two additional reasons.  First, business disparagement requires a false statement that "denigrat[es] the quality of the business, goods, or services," not just "impugn[es] the basic integrity or creditworthiness of a business." *QSP, Inc. v. Aetna Cas. & Sur. Co.*, 773 A.2d

906, 917 n.15 (Conn. 2001) (citation omitted). Because Yout's claim is based on statements regarding Yout's legality, not the service's quality, *see* JA-64–66 (SAC ¶¶ 149–67), Yout has failed to allege business disparagement. *See Learning Care Grp., Inc. v. Armetta*, No. 3:13-CV-01540 (VLB), 2014 WL 12651264, at *16 (D. Conn. Sept. 30, 2014) (dismissing business disparagement claim for, *inter alia*, alleging statements that went to the plaintiff's "integrity and reputation, not the quality or value of its services"). Second, the SAC fails to plead the required element of special damages. Vaguely alleging harm to reputation does not satisfy this element; Yout was required and failed to "allege facts that would enable the Court to discern how [the alleged false statements] . . . proximately led to 'pecuniary loss that has been realized or liquidated.'" *Id.* at *15–16.

## CONCLUSION

The district court correctly dismissed the SAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Yout's own allegations establish its service violates section 1201, and Yout failed to plausibly plead a claim for violation of section 512(f) or its state-law defamation claims. The Court should affirm the district court.

Dated:  May 4, 2023

*/s/ Rose Leda Ehler*

Glenn D. Pomerantz
*Rose Leda Ehler
Shannon Aminirad
Rose.Ehler@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
(213) 683-9100

*Attorneys for Recording Industry of America, Inc.*

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and the word limit of Local Rule 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,555 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.