# 22-2760-cv

## United States Court of Appeals
*for the*
### Second Circuit

YOUT LLC,

*Plaintiff-Appellant,*

– v. –

RECORDING INDUSTRY ASSOCIATION OF AMERICA, INC., DOE RECORD COMPANIES, 1-10,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

**PLAINTIFF-APPELLANT'S RESPONSE TO BRIEF OF
*AMICI CURIAE* SUNO, INC. AND UNCHARTED LABS, INC.**

VALENTIN GURVITS
FRANK SCARDINO
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
(617) 928-1800

EVAN FRAY-WITZER
CIAMPA FRAY-WITZER, LLP
101 Federal Street, Suite 1900
Boston, Massachusetts 02110
(617) 426-0000

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

                                                                                          **Page**

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 2

      I.     As *Amici* Argue, The District Court's Opinion Improperly Defines "Access Controls" In Such A Way That the Statute's Distinctions Between Access Controls and "Copy Controls" Disappear .................. 2

      II.    To Reach Its Tortured Definition Of "Access Control," The District Court Assumed Facts Which Were Not Alleged And For Which There Was No Support ................................................................................. 10

      III.   Compounding the Confusion, the District Court Couched Its Findings As Dealing With Circumvention (and Not Trafficking) Which Is Clearly Erroneous and Which Would Create a Cause of Action Congress Explicitly Declined to Create ............................................. 11

CONCLUSION ....................................................................................................... 15

## TABLE OF AUTHORITIES                                                Page(s)

**Cases:**

*Abkco Music, Inc. v. Sagan,*
  50 F.4th 309 (2d Cir. 2022)………………………………………………....12

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.,*
  536 F.3d 121 (2d Cir. 2008)……………………………………………..12-13

*CoStar Grp., Inc. v. LoopNet, Inc.,*
  373 F.3d 544 (4th Cir. 2004)……………………………………………….14

*DISH Network L.L.C. v. World Cable Inc.,*
  893 F. Supp. 2d 452 (E.D.N.Y. 2012)………………………………………13

*Emmerich Newspapers, Inc. v. Particle Media, Inc.*,
  2025 U.S. Dist. LEXIS 146120 (S. D. Miss. Jul. 29, 2025)…………………4-6

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022)……………………..………………………..8-9

*Leocal v. Ashcroft*,
  543 U.S. 1 (2004)…………………………………………………………..8-9

*United States v. Valle*,
  807 F.3d 508 (2d Cir. 2015)…………………………………………………8

*Universal City Studios v. Corley*,
  273 F.3d 429 (2d Cir. 2001)…………………………………………………15

*Van Buren v, United States,*
  593 U.S. 374 (2021)………………………………………………………7-9

*VHT, Inc. v. Zillow Grp., Inc.,*
  918 F.3d 723 (9th Cir. 2019)..……………………………………………13-14

*White v. DistroKid, LLC*,
  766 F. Supp. 3d 451  (S.D.N.Y. 2025)……………………………………...13

**Statutes and Other Authorities:**

17 U.S.C. § 1201……………………………………………………………….*passim*

18 U.S.C. §1030……………………………………………………………..….7-9

Fed. R. Civ. P. 12(b)(6)……………………………………………………….1, 2, 10

# INTRODUCTION

With respect to the big picture issue – that the District Court below failed to properly appreciate the difference between "access controls" and "copy controls," and, indeed, conflated the two in a manner that cannot be harmonized with the language of the statute, the legislative history, or the relevant case law - *amici* Suno, Inc. and Uncharted Labs, Inc. (hereinafter, "*amici*") have it precisely right. The District Court's opinion, dismissing Appellant Yout, LLC's ("Yout") complaint at the Rule 12 stage, so muddles the statutory analysis of these two concepts that the opinion cannot be salvaged by this Court (nor should it be). Similarly, the District Court's opinion conflates the statute's prohibitions on "circumvention" and "trafficking" in precisely the way Congress tried to avoid when it enacted §1201. *Amici's* brief sheds additional light on the confusion the District Court's opinion has created, which will continue to proliferate if not reversed.

Reduced to their most basic elements, the District Court's errors (as highlighted by *amici*)[1] include:

(1) obliterating the statutory distinction between "access controls" and "copy controls;"

(2) creating facts not contained in the Complaint (and for which there was no basis) to support its amalgamation of the "access control" and "copy control" provisions of §1201; and

---

[1] As discussed at length in Yout's Opening Brief and Reply Brief, the District Court's order is unsustainable for numerous reasons. In this Reply, however, Yout limits its arguments to those implicated by *amici's* brief.

1

(3) creating a cause of action for circumvention of a copy control that was intentionally omitted from the statute by Congress.

Yout briefly addresses each of these errors below.

## ARGUMENT

I.    As *Amici* Argue, The District Court's Opinion Improperly Defines "Access Controls" In Such A Way That The Statute's Distinctions Between Access Controls and "Copy Controls" Disappear.

*Amici* correctly argue that the District Court's opinion improperly conflates access controls and copy controls in such a way that the statute's distinctions between the two disappear. As Yout argued in its Opening Brief (pp. 39-45), the District Court seemingly recognized the difference between access controls and copy controls, but then disregarded the distinction entirely, finding that Yout could not plausibly argue that its service did not circumvent an access control. This finding, of course (made without the benefit of any discovery having been taken), cannot survive the simple and obvious fact (alleged in the Complaint), that YouTube employs no access controls. YouTube's videos are freely accessible to any person with access to the internet.

As the District Court noted, for the purposes of deciding the RIAA's Rule 12(b)(6) motion, it was required to accept the following facts as true: "Access to some internet content is limited by a paywall or protective technologies such as encryption, content scrambling, or ciphers. …The content accessed by Yout is not

2

behind a paywall, encrypted, or subject to a cipher. …It is publicly accessible." JA-236. "YouTube content is not encrypted, i.e., under a 'digital rights management' regime, nor subject to a 'secret key,' like a DVD." JA-237. "The mechanism used by Yout's platform does not require any password, key, or other secret knowledge to access a YouTube video. …Rather, YouTube provides the means of accessing its videos to anyone who requests them." JA-239.

Ostensibly, the District Court also understood the statutory distinctions between access controls and copy controls:

> In the first, Congress enacted the anti-circumvention provision set forth in subsection 1201(a)(1), which provides that "[n]o person shall circumvent a technological measure that effectively controls access to" a copyrighted work. 17 U.S.C. § 1201(a)(1)(A). This so-called "access control" or "effective access" provision "bars one whom technology locks out of a copyrighted work from breaking into it." 4 Nimmer on Copyright § 12A.03[A][1] (2022) (cleaned up).
>
> …Whereas subsection 1201(a) focuses on technological measures that "control access" to a copyrighted work, subsection 1201(b) focuses on technological measures that "protect[]" or control "a right of a copyright owner."8 Because a copyright owner's rights include an exclusive right to reproduce a copyrighted work and to distribute copies by sale or otherwise, 17 U.S.C. § 106, subsection 1201(b) is often deemed the "copy-control" provision.

JA-243–45.

Despite the above recognition of the operative facts and law – which required a finding that YouTube does not employ an access control – the District Court engaged in linguistic gymnastics to reach a contrary conclusion:

3

> …the plain meaning of a measure that "controls access" to a protected work appears to be broader than a measure that "prevents" access to a copyrighted work. In the instant context, the plain meaning of the phrase "controls access" may include technical protective measures that restrain a YouTube user's freedom or ability to access the location where downloadable files are stored and download them.

JA-251.

As *amici* correctly note, this "mode of analysis would collapse the distinction between access controls and copy controls." *Amici* brief, p. 14. As *amici* argue, the District Court's definition would mean that "<u>any</u> copy control could be interpreted as an access in some form or other. But that understanding of the statutory text would convert copy controls from a separate statutory category… into a mere subset of access controls…" *Id.* at 15.

The District Court's opinion ignores the simple fact (which it acknowledged it had to accept as true), that the videos displayed on YouTube are freely available to "*anyone who requests them*" without a paywall, encryption, password, or decryption. By looking past this obvious lack of access control to what the end users does with the freely accessible videos is to confuse and conflate the two distinct controls into one. This is directly contrary to the case law from this Court and others, the statute, and the commentary. *See, e.g.,* Yout's Opening Brief, pp. 28-32; 39-42.

Although obviously not binding on this Court, the recent decision in *Emmerich Newspapers, Inc. v. Particle Media, Inc.*, 2025 U.S. Dist. LEXIS

4

146120 (S. D. Miss. Jul. 29, 2025) may yet prove instructive. There, the Defendant, "Particle is a company that 'owns a free website and application called 'NewsBreak' which provides users with access to local news stories precisely tailored to the user's preferences. To accomplish this, NewsBreak uses a 'web crawler' which systematically searches the internet for news content, then scans the pertinent websites, analyzes them for their content, copies the content verbatim and saves it on its website.' …The genesis of this lawsuit (and prior litigation between the parties) was Emmerich's discovery that Particle had available for viewing on its website/app the full content of thousands of Emmerich's articles, albeit without Emerich's ads and other content." *Id.* at*3, fn. 2.

In *Particle*, the Plaintiff originally argued (as the RIAA does here) that the Defendant violated an access control by scraping content from Plaintiff's websites. Faced with a lack of evidence that the Defendant scraped anything other than the articles that could be accessed by the public on Plaintiff's freely accessible websites, Plaintiff pivoted:

> By its current motion, Emmerich posits a new theory. It no longer claims Particle's web crawler circumvented Emmerich's access control measures to gain access to its content. …It now contends that the illegal circumvention occurred when, after the web crawler had scraped the entire webpage for each article, including the HTML paywall code, it "removed, deactivated and impaired" Emmerich's paywall and failed to save it along with the article's headline, images and content. To put it in Congress's parlance, Emmerich's claim is not that Particle used a

5

tool, i.e., its web crawler, to break into Emmerich's house; rather, Emmerich's claim is that Particle, after accessing the house and "stealing" Emmerich's articles, then used a tool, the parser, to delete the paywall, and then saved the "stolen content its server scraped where anyone using the NewsBreak app could read the article in its entirety without the inconvenience of paying." In sum, Emmerich is complaining about Particle's use of its content, not its unauthorized access to the content.

*Id.* at *43-44.

Citing cases from this Court, the Federal and Fifth Circuits, and others, the *Particle* Court then went on to hold that, an access control claim could not be contorted to encompass the use made of the copyrighted materials:

> The plain language of the statute, therefore, requires a plaintiff alleging circumvention (or trafficking) to prove that the defendant's <u>access</u> was unauthorized. …the DMCA only targets the circumvention of the technological measure guarding copyrighted material and "does not concern itself with the use of those materials after circumvention has occurred."
> …a defendant's subsequent use of copyrighted material, i.e., infringement, was well protected under existing law. Id. Here, Emmerich's reimagined circumvention claim is that the parser's stripping out the paywall code, enabled non-subscribers to view articles, which is only another way of saying that Particle infringed on its right to display and/or distribute Emmerich's copyrighted content. As Emmerich has not demonstrated that Particle's <u>access</u> was unauthorized, Particle's motion for summary judgment on the circumvention claims will be granted and Emmerich's motion will be denied.

*Id.* at 45-46 (emphasis in original).

Nor is this the only context in which this Court (and others) have been asked to distinguish between *access* to computer files and the *use* of those files. The

6

somewhat-analogous Computer Fraud and Abuse Act of 1982 ("CFAA") creates both civil and criminal liability for anyone who "intentionally accesses a computer without authorization or exceeds authorized access" and thereby obtains computer information. *See,* 18 U.S.C. §1030(a)(2); *Van Buren v, United States*, 593 U.S. 374, 379 (2021). Courts examining the CFAA have often had to address the question of what it means to "access" a computer. In *Van Buren*, for example, Van Buren was a former Georgia police sergeant who was paid a bribe to improperly access a law enforcement database with his credentials and run a license plate as a favor to an acquaintance.[2] A jury convicted Van Buren of violating the CFAA, and the Eleventh Circuit upheld the conviction, finding that Van Buren had exceeded his authorized access by "accessing the law enforcement database for an 'inappropriate reason.'" *Van Buren* 593 U.S. at 381. The Supreme Court reversed, however, concluding that both the terms "access" and "authorized access" spoke only to whether the individual had permission to access the computer files at issue, and not whether the individual was accessing those files for an improper purpose. *Id.* at 396 ("Van Buren accordingly did not 'exceed authorized access' to the database, as the CFAA defines that phrase, even though he obtained information from the database for an improper purpose.") In reaching this conclusion, the

---

[2] Unbeknownst to Van Buren, the acquaintance was actually working as an FBI informant.

Supreme Court employed what it termed a "gates-up-or-down inquiry – one either can or cannot access a computer system, and one either can or cannot access certain areas within the system." *Id.* at 390.

Even before the Supreme Court's decision in *Van Buren*, this Court had come to the same conclusion under remarkably similar circumstances. In *United States v. Valle*, 807 F.3d 508 (2d Cir. 2015), this Court reversed the conviction of a police officer who had accessed the National Crime Information Center database to get the personal information of women about whom he fantasized abducting and torturing. In examining the CFAA "access" question, this Court noted that Congress intended the relevant CFAA provisions to be "trespass" provisions, "analogous to 'breaking and entering.'" *Id.* at 525. This Court additionally held that the common usage of the term "'authorization' suggests that one 'accesses a computer without authorization' if he accesses a computer without permission to do so at all." *Id.* at 524. There, too, the Court's focus was on the question of whether access was in any way permitted and not on the use of the computer files once access was obtained.

Courts have applied the same CFAA interpretation to civil CFAA cases because the Court is required to "interpret the statute consistently, whether we encounter the application in a criminal or noncriminal context…." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1200 (9th Cir. 2022)(*quoting Leocal v. Ashcroft*,

8

543 U.S. 1, 11 n.18 (2004)). In *hiQ Labs*, Plaintiff hiQ Labs used its technology to "scrape" publicly accessible information from LinkedIn profiles for its own business purposes. LinkedIn claimed that this scraping – which it specifically prohibited – was without authorization and violated the CFAA. In rejecting LinkedIn's arguments, the Ninth Circuit noted that the term "'access without authorization,'… suggests a baseline in which access is not generally available and so permission is ordinarily required." *Id.* at 1195.

Indeed, after discussing and analyzing the Supreme Court's "gates-up-gates-down" analogy from *Van Buren*, the Ninth Circuit concluded that – when a website makes information available to anyone on the internet the entire "gates-up-gates-down" analysis of access was immaterial:

> With regard to websites made freely accessible on the Internet, the "breaking and entering" analogue invoked so frequently during congressional consideration has no application, and the concept of "without authorization" is inapt.
>
> … As we have noted, however, a defining feature of public websites is that their publicly available sections lack limitations on access; instead, those sections are open to anyone with a web browser. In other words, applying the "gates" analogy to a computer hosting publicly available webpages, that computer has erected no gates to lift or lower in the first place. *Van Buren* therefore reinforces our conclusion that the concept of "without authorization" does not apply to public websites.

*Id.* at 1198–99.

The through-line to all of these cases is clear: federal statutes addressing questions of "access" and "unauthorized access" – and, by extension the DMCA,

9

which concerns itself with "access controls," are concerned about the unauthorized access of computer files that are *not publicly accessible* and not files, such as those at issue here, that are made available to "anyone with a web browser."

The District Court's finding that Yout could not plausibly allege that it does not circumvent (or traffic in a service that circumvents) an access control is clearly erroneous and must be reversed.

> II. To Reach Its Tortured Definition Of "Access Control," The District Court Assumed Facts Which Were Not Alleged And For Which There Was No Support.

In reaching its conclusion that YouTube employed some sort of "access control" over videos that YouTube makes available to every person with an internet connection, the District Court appears to have assumed that YouTube maintains one set of computer files that are stream-able and another set of computer files that are downloadable. There is absolutely no basis for this assumption and, to the extent that the District Court's opinion turns on that assumption, it must be reversed for that reason alone. This is, of course, one of the many reasons that dismissal of Yout's action at that Rule 12 stage was improper.

Moreover, as *amici* note, even if the District Court's factual assumption ultimately proved true, it would still be immaterial to the access control/copy control distinction. *See amici brief*, pp. 14-18. An access control measure is a measure that controls access to the work itself – here, the videos are freely

10

available to the public – there is no measure that controls access to a particular file location. And, of course, it must be noted yet again that YouTube does not even control access to the *location* of the video file. Anyone with a web browser can see that location with a single click of their mouse.

All of this, of course, would be better presented to a factfinder through expert testimony following discovery. This is precisely what the District Court's decision precluded and it is why this Court should reverse that decision.

> III. Compounding the Confusion, the District Court Couched Its Findings As Dealing With Circumvention (and Not Trafficking) Which Is Clearly Erroneous and Which Would Create a Cause of Action Congress Explicitly Declined to Create.

Finally, the District Court's decision – which focused almost exclusively on § 1201(a)(1)(A), the anti-circumvention section, further complicates an already hopelessly-muddled decision. Section 1201(a)(1)(A), which deals with direct circumvention of a technological measure, is aimed *solely* at access controls and quite intentionally has nothing to do with copy controls. *Amici* properly point to a table from the Copyright Office which summarizes §1201's prohibitions (both on circumvention and trafficking) and which shows that there is no legislative prohibition on the circumvention of copy controls in §1201. As *amici* discuss in their brief, this omission was fully intentional. *Amici* brief, pp. 9-13.

By couching its decision as sounding under §1201(a)(1)(A), the District Court has managed a hat-trick of reversible error: (1) as is discussed above (and in

11

Yout's other briefs), Yout's service cannot enable the circumvention of an access control, since no such control is in place; (2) the direct circumvention section of §1201 is inapplicable because Yout itself does not circumvent *anything* (nor did the RIAA even claim otherwise in its takedown notices to Google); and (3) even if the District Court's decision could be read to encompass the circumvention of a copy control, §1201 would not apply.

In treating this case as one implicating direct circumvention, the District Court mistook the well-established concepts of direct and contributory copyright liability. There is a reason that the RIAA's takedown notices to Google did not allege that *Yout* was circumventing any technological measure (either an access control or a copy control) and that is because Yout itself plays no role in a user's decision as to what video or audio file they choose to download.[3] This Court has made clear that such actions do not meet the level of volitional conduct to state a claim for direct copyright infringement. *See, e.g., Abkco Music, Inc. v. Sagan,* 50 F.4th 309, 321 (2d Cir. 2022)("Direct liability requires 'volitional conduct' that 'causes' the copying or distribution. …That is, direct liability attaches only to 'the person who actually presses the button'")(citations omitted); *Cartoon Network LP, LLLP v. CSC Holdings, Inc.,* 536 F.3d 121, 131-32 (2d Cir. 2008)("In determining

---

[3] As is discussed in Yout's earlier briefs, many of the audio and video files that Yout's users choose to download are not subject to copyright protections at all (or are fully authorized for copying by their creators).

12

who actually 'makes' a copy, a significant difference exists between making a request to a human employee, who then volitionally operates the copying system to make the copy, and issuing a command directly to a system, which automatically obeys commands and engages in no volitional conduct. …Here, by selling access to a system that automatically produces copies on command, Cablevision more closely resembles a store proprietor who charges customers to use a photocopier on his premises, and it seems incorrect to say, without more, that such a proprietor 'makes' any copies when his machines are actually operated by his customers"); *DISH Network L.L.C. v. World Cable Inc.,* 893 F. Supp. 2d 452, 464 (E.D.N.Y. 2012)("Section 1201(a)(1)(A), the anti-circumvention provision, 'aims against those who engage in unauthorized circumvention of technological measures.... [It] focuses directly on wrongful conduct, rather than on those who facilitate wrongful conduct. …Thus, contrary to the Plaintiffs' argument in opposition to the motion to dismiss, the Defendants cannot be liable under § 1201(a)(1)(A) for the alleged circumvention by the World Cable subscribers"); *White v. DistroKid, LLC*, 766 F. Supp. 3d 451, 458 (S.D.N.Y. 2025)("Second Circuit case law makes clear that where a machine or system automatically undertakes actions that result in the unlawful copying of a copyrighted work, the mere ownership, construction, or supervision of the machine or system will not establish volitional conduct.") *See also VHT, Inc. v.*

13

*Zillow Grp., Inc.,* 918 F.3d 723, 732 (9th Cir. 2019)("…direct copyright liability for website owners arises when they are actively involved in the infringement. '[T]he distinction between active and passive participation' in the alleged infringement is 'central' to the legal analysis. … …activities that fall on the other side of the line, such as 'automatic copying, storage, and transmission of copyrighted materials, when instigated by others, do[] not render an [Internet service provider] strictly liable for copyright infringement[.]' …In other words, to demonstrate volitional conduct, a party like VHT must provide some 'evidence showing [the alleged infringer] exercised control (other than by general operation of [its website]); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution' of its photos."); *CoStar Grp., Inc. v. LoopNet, Inc.,* 373 F.3d 544, 550 (4th Cir. 2004)("to establish *direct* liability under… the Act, something more must be shown than mere ownership of a machine used by others to make illegal copies. There must be actual infringing conduct with a nexus sufficiently close and causal to the illegal copying that one could conclude that the machine owner himself trespassed on the exclusive domain of the copyright owner.")(emphasis in original).

And, finally, to the extent that the District Court's opinion could be seen as recognizing liability under §1201 for circumvention of a copy control, that too is in error since, as *amici* argue, Congress intentionally omitted such liability from

14

the statute when it enacted §1201. *Amici* brief, pp. 9-13. *See also Universal City Studios v. Corley*, 273 F.3d 429, 440-441 (2d Cir. 2001)(discussing the differences between §1201's various provisions – none of which create liability for direct circumvention of copy controls – and noting that "the focus of subsection 1201(a)(2) is circumvention of technologies designed to prevent access to a work.")

## CONCLUSION

For the reasons stated hereinabove; in Yout's Opening and Reply Briefs; and in the briefs of *amici*, this Court should REVERSE the District Court's judgment dismissing Yout's complaint and REMAND for further proceedings consistent with such reversal.

*Respectfully submitted,*

/s/ Evan Fray-Witzer
EVAN FRAY-WITZER
CIAMPA FRAY-WITZER, LLP
101 Federal Street, STE 1900
Boston, Massachusetts 02110
(617) 426-0000

VALENTIN GURVITS
FRANK SCARDINO
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
(617) 928-1800

Attorneys for Plaintiff-Appellant

15

## **CERTIFICATE OF COMPLIANCE**

This document complies with the page limit set by the Court's October 10, 2025 Order because this brief contains fewer than 20 pages.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

/s/ Evan Fray-Witzer

.